OPINION OF THE COURT
 

 Titone, J.
 

 We are asked on these appeals to determine whether a Medicaid lien placed pursuant to Social Services Law § 104-b on the proceeds of a personal injury settlement must be satisfied before those funds may be transferred to a "supplemental needs trust” that complies with EPTL 7-1.12. Applying both Federal and State Medicaid statutes, we conclude that the Department of Social Services (DSS) is entitled to first satisfy the lien from those funds, leaving the remainder available for
 
 *303
 
 transfer to a supplemental needs trust. Accordingly, we reverse.
 

 The pertinent facts in each of these unrelated appeals are essentially the same. Plaintiffs were allegedly injured due to the negligence of third parties. Each applied for Medicaid from their local DSS office and was determined to be eligible. As a condition of Medicaid eligibility, both plaintiffs agreed to assign to DSS their rights to recover from any third parties who were responsible for their injuries.
 

 Each plaintiff commenced a personal injury action against the defendants who were allegedly responsible for their disabling injuries, and entered settlement agreements specifying the net amount of damages they would receive. The parties agreed that, after the payment of attorney’s fees and other various costs, the balance owed to the plaintiffs would be transferred into a supplemental needs trust (see, EPTL 7-1.12). A supplemental needs trust, or "SNT,” is a "discretionary trust established for the benefit of a person with a severe and chronic or persistent disability” (EPTL 7-1.12 [a] [5]) that is designed to enhance the quality of the disabled individual’s life by providing for special needs without duplicating services covered by Medicaid or destroying Medicaid eligibility (Bill Jacket, L 1993, ch 433). Under Federal and State Medicaid laws, funds placed in a SNT are not considered resources that are "available” to a Medicaid recipient for purposes of assessing the recipient’s eligibility for benefits, so long as the trust document conforms with the EPTL’s requirements
 
 [1]
 
 and further grants to the State a remainder interest in the trust assets remaining at the recipient’s death up to the amount of all public assistance provided
 
 (see,
 
 42 USC § 1396p [d] [4]; Social Services Law § 366 [2] [b] [2] [iii]).
 
 [2]
 

 In accordance with the EPTL’s guidelines, the proposed trust agreements before us each named the State as the first
 
 *304
 
 remainderman. However, DSS objected to each proposal on the ground that they did not require satisfaction of the respective Medicaid liens from the proceeds of the tort settlements before funding the trusts from those sums. In each case, DSS sought to place a lien on the settlement proceeds pursuant to Social Services Law § 104-b to recoup from the responsible third parties the medical assistance paid to the plaintiffs.
 

 Supreme Court approved both settlements and directed that a supplemental needs trust be created for each plaintiff with the net settlement proceeds. The courts denied DSS’ request for immediate payment of the lien, reasoning that the State’s interest in reimbursement was protected because, pursuant to Social Services Law § 369 (2), it is entitled to recoup upon the recipient’s death the total of lifetime medical assistance provided to that individual from the remaining trust assets.
 

 In
 
 Cricchio v Pennisi,
 
 the Appellate Division affirmed, holding that a supplemental needs trust may be funded "prior to the satisfaction of a public welfare official’s lien for medical assistance furnished prior to the formation of [a public] trust.” (220 AD2d 100, 107.) The Court largely based its conclusion on the fact that the Legislature had failed on one occasion to enact proposed amendments to Social Services Law § 366 that would have included as part of the applicant’s available resources for eligibility purposes funds held in trust unless any outstanding Medicaid liens were satisfied, and on another had rejected legislation providing that no trust fund could be created for a disabled individual under age 65 so long as a Medicaid lien existed against the recipient’s property. The Appellate Division concluded that "[t]he most plausible inference to be drawn from [the Legislature’s failure to enact either version of the amendments to section 366] is that the Legislature did not intend the existence of a claim pursuant to Social Services Law §§ 104, 104-b or 369 to stand as an impediment to the funding of the special needs trust in conformity with the provisions of Social Services Law § 366 (2) (b) (2).” (220 AD2d, at 107,
 
 supra)
 
 The Appellate Division in
 
 Link v Town of Smithtown
 
 affirmed, relying on the Appellate Division decision in
 
 Cricchio.
 
 This Court granted DSS’ motion for leave to appeal in both cases, and we now reverse.
 

 Medicaid is a jointly funded Federal and State medical assistance program that is established by title XIX of the Social Security Act (42 USC § 1396
 
 et seq.)
 
 and is implemented in this State by article 5, title 11 of the Social Services Law. The purpose of the program is to pay for necessary medical care for
 
 *305
 
 eligible individuals whose income and resources are insufficient to meet the costs of their medical care (42 USC § 1396; Social Services Law § 363;
 
 Matter of Costello [Stark] v Geiser,
 
 85 NY2d 103). As a condition of the receipt of Federal program funding, State Medicaid plans must conform with the statutory standards established by Federal law and the regulations promulgated by the Secretary of Health and Human Services (42 USC § 1396a; Social Services Law § 363-a [1]).
 

 In 1993, the Social Security Act was amended to provide that in any case where Medicaid payments have been made under the State plan and a third party has a legal responsibility to pay for health care items or services furnished to an individual, "the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services” (42 USC § 1396a [a] [25] [I]). To that end, the Act requires that a State or local agency administering the State plan "take all reasonable measures to ascertain the legal liability of third parties * * * to pay for care and services available under the plan” (42 USC § 1396a [a] [25] [A]). A third party is defined as an individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under the State plan (42 CFR 433.136). Recoupment from responsible third parties is necessary to ensure that the Medicaid program remain " 'the payor of last resort’ ”
 
 (Matter of Costello [Stark] v Geiser,
 
 85 NY2d 103, 106,
 
 supra;
 
 S Rep No. 146, 99th Cong, 2d Sess 1, 312, reprinted in 1986 US Code Cong & Admin News 42, 279).
 

 The recoupment of Medicaid funds from responsible third parties is accomplished by Federal directives that the State plan include assignment, enforcement and collection mechanisms (42 USC § 1396k [a] [1] [A]; § 1396a [a] [25] [I]). Specifically, as a condition of eligibility, an applicant must assign to DSS any rights he or she has to seek reimbursement from any third party up to the amount of medical assistance paid (42 USC § 1396k [a] [1] [A]; 42 CFR 433.146 [c]; Social Services Law § 366 [4] [h] [1]; 18 NYCRR 360-7.4 [a] [6]). Additionally, a Medicaid recipiént must "cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan,” unless good cause exists for his or her refusal to cooperate (42 USC § 1396k [a] [1] [C];
 
 see also, Perry v Dowling,
 
 95 F3d 231, 234 [2d Cir 1996]).
 

 New York’s statutory scheme provides that DSS "shall be subrogated, to the extent of [its] expenditures * * * for medi
 
 *306
 
 cal care furnished, to any rights such person may have to medical support or third party reimbursement” (Social Services Law § 367-a [2] [b]). To enable the public welfare official to enforce its substantive right to pursue repayment from responsible third parties
 
 (see, Matter of Costello [Stark] v Geiser, 85
 
 NY2d, at 108-109,
 
 supra),
 
 the New York Legislature enacted Social Services Law § 104-b, which authorizes DSS to place a lien for public assistance on personal injury claims and suits against third parties to the extent of the expenditures made on the recipient’s behalf.
 
 [3]
 
 Once the statutory notice and filing requirements are met, the public welfare official’s lien attaches to any verdict, judgment or award in any suit respecting such injuries, "as well as [to] the proceeds of any settlement thereof” (Sbcial Services Law § 104-b [3]). The lien continues "until released and discharged by the local public welfare official” (§ 104-b [7]). •
 

 Plaintiffs do not dispute that DSS is entitled to place a lien on the proceeds of the tort settlements, but argue that under Social Services Law § 369 (2) (a), the liens cannot be satisfied until the Medicaid recipient’s death. According to plaintiffs, DSS’ mandatory remainder interest in the payback trust’s funds sufficiently preserves DSS’ ability to enforce the lien. Plaintiffs’ theory is flawed for several reasons.
 

 First, while it is true that under Social Services Law § 369 (2) a Medicaid lien ordinarily may not be imposed against the property of any
 
 individual
 
 prior to his death, paragraph (c) of that statute expressly provides that this prohibition is not intended to interfere with the right of the Social Services agency to recover from
 
 third parties
 
 under section 104-b’s lien provisions. This exemption for recoveries from third parties complies with the hierarchy for recoupment mandated by Congress.
 

 Pursuant to 42 USC § 1396k, when reimbursement is sought from responsible third parties through the assignment provisions, States are to first "retain” that portion "of any amount collected * * * as is necessary to reimburse it for medical as
 
 *307
 
 sistance payments made on behalf of an individual with respect to whom such assignment was executed * * * and the
 
 remainder
 
 of such amount collected shall be paid to such individual” (42 USC § 1396k [b] [emphasis supplied]). This provision indicates that the government has priority in recouping funds from third parties who are liable for a Medicaid recipient’s medical expenses, and that only the remainder of those funds becomes available to the Medicaid recipient for placement in a trust or other uses.
 

 This recoupment hierarchy follows necessarily from the assignment and subrogation scheme. As the Medicaid recipient’s assignee
 
 (see,
 
 42 USC § 1396k; Social Services Law § 366 [4] [h] [1]), DSS obtains all of the rights that the recipient has as against the third party to recover for medical expenses, including the ability to immediately pursue those claims against the third party. Because the injured Medicaid recipient has assigned its recovery rights to DSS, and DSS is subrogated to the rights of the beneficiary (Social Services Law § 367-a [2] [b];
 
 Matter of Costello [Stark] v Geiser,
 
 85 NY2d 103,
 
 supra),
 
 the settlement proceeds are resources of the third-party tortfeasor that are owed to DSS. Accordingly, the lien on the settlement proceeds attaches to the property of the third party, and thus does not violate the statutory prohibition against imposing a lien against a beneficiary’s property until after his or her death
 
 (see,
 
 Social Security Act § 1917 [a] [42 USC § 1396p (a)]; Social Services Law § 369 [2] [a]). The flaw in plaintiffs’ theory that the lien cannot be satisfied until the recipient’s death is that it fails to appreciate this critical distinction between the assets of a responsible third party and assets belonging to the Medicaid recipient.
 
 [4]
 

 Plaintiffs alternatively contend that immediate satisfaction of the lien from funds that are earmarked for a supplemental
 
 *308
 
 needs trust would conflict with 42 USC § 1396p (d) (4) (A) and Social Services Law § 366 (2) (b) (2) (iii), which provide that funds held in such a trust are not "available” resources and cannot be used to defeat Medicaid eligibility.
 

 The statutory provisions referenced by plaintiffs permit assets held in a SNT to be excluded when determining the
 
 eligibility
 
 of individual recipients. Nothing expressed in or implied by those provisions indicates that they were intended to interfere with the different set of rules mandating the assignment of tort recoveries and recoupment from responsible third parties.
 
 [5]
 

 Under plaintiffs’ theory, a Medicaid recipient could shelter funds recovered from liable third parties and completely avoid the repayment obligation by transferring those sums to a trust. However, there is no indication that the amendments were designed to alter the legal liability of any responsible third party to reimburse Medicaid for care, which is a cornerstone of the Medicaid program. Rather, the legislative history of the acts authorizing the creation and favorable treatment of assets held in a SNT reveals that the amendments were prompted by the sole desire to encourage families to undertake long-term financial planning for loved-ones with family assets that were not otherwise earmarked "to reimburse government assistance” (Governor’s Mem of Approval, Bill Jacket, L 1993, ch 433 [supplemental needs trusts would be created with
 
 "funds the State would not obtain to reimburse itself for public assis
 
 
 *309
 

 tance in any event"]
 
 [emphasis supplied]). Indeed, a Memorandum filed with the Senate Bill to amend the laws in relation to supplemental needs trusts provides that the "bill should not have any budget implications” because "[t]he assets in a supplemental needs trust are, by definition, assets which are not available to pay for the cost of care or assistance provided to persons with disabilities” and typically "belong to * * * persons * * * none of whom are obligated to contribute any money whatsoever to support the person with the disability” (Introducer’s Mem in Support, Bill Jacket, L 1993, ch 433). Certainly, had the legislation been designed to defer reimbursement payments owed by responsible third parties, it would have signified a sweeping change in the law with fiscal implications that would have been mentioned.
 

 As a practical matter, the statutory assignment and lien provisions would be rendered meaningless if they remained unenforceable until the recipient’s death. Plaintiffs fail to point to any legal mandate that would require the trustee to preserve trust assets at a level sufficient to satisfy the Medicaid lien upon that event. The trustee could easily deplete trust assets by spending them on worthwhile "quality of life” expenditures such as vacations and entertainment for the disabled beneficiary. The likelihood that many section 104-b liens may never be satisfied has the potential to thwart the twin goals of the Medicaid program — i.e., to obtain reimbursement from liable third parties and remain the payer of last resort.
 

 DSS’ conclusion that repayment of the lien from settlement funds is required prior to the creation of a SNT with those proceeds is not only consistent with the governing statutes and regulations but also comports with the conclusion reached by the Health Care Financing Administration (HCFA)
 
 [6]
 
 — the Federal agency charged with interpreting Medicaid requirements. Thus, where, as here, "the federal agency expressly concurs in the state’s interpretation of the statute, and the interpretation is a permissible construction of the statute,” the interpretation is entitled to deference
 
 (Perry v Dowling,
 
 95 F3d 231, 237,
 
 supra).
 

 Given that the parties did not present any arguments to this Court concerning whether the entire amount of the personal
 
 *310
 
 injury settlement or only that portion attributable to past medical expenses is available to satisfy the lien, we do not pass on the question, which must be addressed in the first instance by the court on remittal.
 

 Accordingly, in
 
 Cricchio v Pennisi,
 
 the order of the Appellate Division should be reversed, without costs, and the case remitted to Supreme Court, Queens County, for further proceedings in accordance with the opinion herein.
 

 In
 
 Link v Town of Smithtown,
 
 the order of the Appellate Division should be reversed, without costs, and the case remitted to Supreme Court, Suffolk County, for further proceedings in accordance with the opinion herein.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 In each case: Order reversed, etc.
 

 [1]
 

 . To qualify for the favorable treatment accorded to supplemental needs trusts under Federal and State law, the trust document must (1) evince "the creator’s intent to supplement, not supplant, impair or diminish, government benefits or assistance for which the beneficiary may otherwise be eligible” (EPTL 7-1.12 [a] [5] [i]), (2) prohibit the trustee from distributing trust assets in any manner which may impair or diminish the beneficiary’s entitlement to government benefits (EPTL 7-1.12 [a] [5] [ii]), and (3) preclude the beneficiary of the trust from authorizing distributions from the trust (EPTL 7-1.12 [a] [5] [iii]).
 

 [2]
 

 . Because the State is entitled to recoup its expenditures from assets remaining in the trust upon the recipient’s death, these trusts have been coined "pay-back trusts” (Goldfarb and Stone,
 
 Supplemental Needs Trusts for Disabled Persons,
 
 67 NY St BJ [No. 5] 32, 33 [July/Aug. 1995]).
 

 [3]
 

 . Section 104-b provides that "[i]f a recipient of public assistance and care shall have a right of action, suit, claim, counterclaim or demand against another 'on account of any personal injuries suffered by such recipient, then ‘ the public welfare official for the public welfare district providing such assistance and care shall have a lien for such amount as may be fixed by the public welfare official not exceeding, however, the total amount of such assistance and care furnished by such public welfare official on and after the date when such injuries were incurred.” (Social Services Law § 104-b [1].)
 

 [4]
 

 . This distinction also leads to our rejection of the argument that Social Services Law § 104 (3), which prohibits an action to recover medical expenditures against a supplemental needs trust or its trustee, precludes the immediate satisfaction of the liens at issue here. The section 104 (3) prohibition would not be controlling here because DSS did not attempt to place the lien on assets held in an existing trust, but on the settlement proceeds that were intended for, but not yet placed in, a trust.
 

 Nor are we persuaded that this Court’s decision in
 
 Baker v Sterling
 
 (39 NY2d 397) requires a different result. In
 
 Baker,
 
 this Court explained that Social Services Law § 104-b is a "purely procedural” statute that " 'relates to the remedy rather than to the right’ and the scope of the remedy is governed by the terms of the statute creating the right”
 
 (id.,
 
 at 405). The Court went on to conclude that in an action by welfare officials to recover from an infant public assistance recipient, Social Services Law § 104 was the statute creat
 
 *308
 
 ing the right, and thus DSS’ right to recover was "subject to the limitations imposed by section 104”
 
 (id.,
 
 at 405).
 

 By contrast, under the specific facts and circumstances of this case, the right to recover from responsible third parties at issue is not derived from section 104, but rather from the assignment, subrogation, and recoupment provisions created by 42 USC §§ 1396a and 1396k, and Social Services Law § 366 (4) (h) (1) and § 367-a (2) (b). Accordingly, any limitations found in section 104, including the section 104 (3) prohibition on actions by DSS against a supplemental needs trust for reimbursement, are not relevant here.
 

 [5]
 

 . We decline to attribute any definitive meaning to the Legislature’s failure to enact any of the proposed amendments to Social Services Law § 366 (2) as did the courts below. That statute governs Medicaid eligibility, not the rights of social service agencies to enforce liens against responsible third parties. Presumably, had the Legislature desired to alter the rules governing the enforcement of liens placed on tort recoveries, it would have amended Social Services Law §§ 104-b or 369 (2) (c), which specifically address that topic.
 

 Likewise, the regulation promulgated by State DSS — 18 NYCRR 360-4.5 (b) (5) (ii) — concerns the effect of an unsatisfied section 104-b lien on the determination of an individual’s Medicaid
 
 eligibility .
 
 Thus, the question whether this regulation is inconsistent with the governing statutes is not squarely before us on this appeal.
 

 [6]
 

 . We have taken judicial notice of a Memorandum issued by the HCFA to all State Medicaid Directors which concludes that under the Federal assignment mandates, DSS may seek reimbursement from third-party settlement proceeds prior to their transfer to the individual recipient for placement in a supplemental needs trust.