972 P.2d 439 (1998)
S.S., a minor, Plaintiff and Appellee,
v.
STATE of Utah and Office of Recovery Services, Defendant and Appellant.
No. 960430.
Supreme Court of Utah.
November 27, 1998.
*440 Lowell V. Smith, Richard K. Glauser, Salt Lake City, for plaintiff
Jan Graham, Att'y Gen., Linda Luinstra, Asst. Att'y Gen., Salt Lake City, for defendant
HOWE, Chief Justice:
The State of Utah appeals from the trial court's order that insurance payments for the injury which permanently disabled the minor plaintiff may be used to fund a "special needs trust" to be established to augment his long-term care without first reimbursing the State for Medicaid payment of plaintiff's nursing home care.

FACTS
Sixteen-year-old S.S. suffered massive brain damage and was permanently disabled when a drunk driver crossed into oncoming traffic and struck the motorcycle upon which he and his eighteen-year-old brother were riding. S.S.'s parents are divorced; he was residing in Utah with his father, Richard S., at the time of the accident, although his mother had been awarded his custody.
A combination of private automobile, accident, and injury insurance plans contributed toward payment of S.S.'s medical costs, which totaled over $350,000. In addition, S.S.'s stepfather maintained a health insurance policy with Deseret Mutual Benefit Association ("DMBA"), which paid a substantial amount of medical expenses but provided no coverage for nursing home care.
S.S. was transferred from hospital care to nursing home care when his condition improved. Richard S. applied for and received Medicaid on S.S.'s behalf and, pursuant to statute, executed an assignment of S.S.'s rights to any insurance recovery to the State. S.S.'s three older brothers, Douglas, Robert, and Michael S., were appointed conservators of his estate and petitioned the trial court for authorization to settle several insurance claims and to place the funds recovered in a special needs trust for S.S. The court approved settlement of $150,000 in insurance proceeds on February 29, 1996, and approved an additional $25,000 on August 26 of that year. The State asserted its statutory lien on part of the proceeds. The trial court held that (1) the State did not have a valid assignment because it had not been executed by the court-appointed conservators or by a legal guardian, (2) the State had not perfected its lien on the insurance proceeds, and (3) the insurance proceeds could be placed in the special needs trust without first reimbursing the State for nursing home costs paid by Medicaid which totaled $44,454.58. The court's decision was influenced by the absence of a requirement for pre-trust reimbursement in the "supplemental needs trust" ("SNT")[1] provisions of the United States Code, the Federal Regulations, and the Utah Code. The State appeals, assigning as error all three of the above trial court rulings.

ANALYSIS
This case presents only questions of law, which we review for correctness, granting *441 no deference to the conclusions of the trial court. State v. Pena, 869 P.2d 932, 936 (Utah 1994).

I. ASSIGNMENT OF BENEFITS
The conservators contended in the trial court, and the court agreed, that the assignment of third-party payments made by Richard S. to Medicaid as a condition for receiving benefits was invalid because it was not made by S.S.'s mother, who had been awarded his custody, or by his court-appointed conservators. We begin with the plain wording of the relevant statutes.
To the extent that medical assistance is actually provided to a recipient, all benefits for medical services or payments from a third party otherwise payable to or on behalf of a recipient are deemed to be assigned to the department if the department provides, or becomes obligated to provide, medical assistance. That assignment authorizes the department to submit its claim to the third party and authorizes payment of benefits directly to the department.
Utah Code Ann. § 26-19-4.5(1) (emphasis added). This statutory language would seem to indicate that without more, a recipient's acceptance of Medicaid payments operates to create an assignment. Additionally, however, in this case an assignment was made by the injured minor's father who is legally responsible for his son's medical expenses. Utah Code Ann. § 78-45-3(2)(a) provides that "[e]xcept as limited in a court order ... [t]he expenses incurred on behalf of a minor child for reasonable and necessary medical and dental expenses, and other necessities are chargeable upon the property of both parents, regardless of the marital status of the parents." Thus there was a valid assignment of the insurance recovery.

II. PERFECTION OF LIEN
Conservators further complained in the trial court that the State had not perfected its lien on the insurance proceeds because it had not submitted evidence of compliance with Utah Code Ann. § 26-19-5. Under that section, the State's claim to recover medical assistance is a lien against proceeds payable to the recipient by liable third parties. Subject to certain conditions, the State may maintain an action on its lien directly against the third party. That section provides that
The department shall mail or deliver written notice of its lien to the third party at its principal place of business or last known address. The notice shall include the recipient's name, the approximate date of injury, a general description of the type of injury and, if applicable, the general location where the injury is alleged to have occurred.
Utah Code Ann. § 26-19-5(2). This section further provides:
(3) The department may commence an action on its lien in its own name[;] however, that lien is not enforceable as to a third party unless:
(a) the third party receives written notice of the department's lien before it settles with the recipient; or
(b) the department has evidence that the third party had knowledge that the department provided or was obligated to provide medical assistance.
Id. § 26-19-5(3). The obvious purpose of this section is to protect a third party who is unaware of the State's lien and settles with the recipient. That, of course, did not happen here because the State has not brought an action against any third party but has, instead, challenged the disposition of insurance funds that are subject to court approval, making notice to any third party irrelevant.
Additionally, section 26-19-7(1)(a) provides that a recipient "may not file a claim, commence an action, or settle, compromise, release, or waive a claim against a third party for recovery of medical costs for an injury, disease, or disability for which the department has provided ... medical assistance without the department's written consent." This provision protects both the liable third party and the State from ill-informed or devious action by the recipient.
In the instant case, the conservators assigned certain insurance benefits to DMBA and also sought to settle with several other insurers without the permission of the State. In such an instance,

*442 the department is not bound by any decision, judgment, agreement, or compromise rendered or made on the claim or in the action. The department may recover in full from the recipient all medical assistance which it has provided and retains its right to commence an independent action against the third party.
Utah Code Ann. § 26-19-7(2) (emphasis added). Furthermore, the department has an "unconditional right to intervene in an action commenced by a recipient for recovery of medical costs connected with the same injury, disease, or disability, for which it has provided or has become obligated to provide medical assistance." Id. § 26-19-7(1)(b). Therefore, regardless of whether the State has a valid lien, the recipient's preemptive action does not cost the State its right to third-party payments which are in settlement or are already in the hands of the beneficiary. The court of appeals recognized this in Estate of Higley, 810 P.2d 436 (Utah Ct.App. 1991), and Camp v. Office of Recovery Services, 779 P.2d 242 (Utah Ct.App.1989), both holding that where the recipient had settled insurance claims without the State's consent, the State could recover full reimbursement from the recipient of its outlay for medical expenses.
The conservators further contended in the trial court, and the court agreed, that any lien the State might have is illegal under 42 U.S.C. § 1396p(a), which provides that "[n]o lien may be imposed against the property of an individual prior to his death on account of medical assistance paid or to be paid on his behalf under the state plan." The New York Court of Appeals recently addressed this issue in the consolidated appeals of Cricchio v. Pennisi and Link v. Town of Smithtown, 90 N.Y.2d 296, 683 N.E.2d 301, 660 N.Y.S.2d 679 (1997). There, the court stated that as a consequence of the mandatory assignment
the settlement proceeds are resources of the third party tortfeasor that are owed to [the state recovery office]. Accordingly, the lien on the settlement proceeds attaches to the property of the third party, and thus does not violate the statutory prohibition against imposing a lien against a beneficiary's property until after his or her death. The flaw in plaintiff's theory that the lien cannot be satisfied until the recipient's death is that it fails to appreciate this critical distinction between the assets of a responsible third party and assets belonging to the Medicaid recipient.
660 N.Y.S.2d 679, 683 N.E.2d at 305 (citations omitted). We agree. Payments made by a third party do not legally become the property of the recipient until after a valid settlement, which necessarily must include reimbursement to Medicaid. Therefore, we hold that the State has a valid assignment and an enforceable right against third-party recoveries for S.S.'s injury up to the amount of Medicaid assistance paid as of the time of the settlement approval.

III. REIMBURSEMENT OF MEDICARE AND FUNDING OF THE SUPPLEMENTAL NEEDS TRUST
Under the provisions of 42 U.S.C. § 1396p(d)(4)(A) and Utah Code Ann. § 62A-5-110, a properly drafted discretionary trust, often referred to as a special needs or supplemental needs trust, may provide resources to a disabled person under sixty-five years of age for care beyond that which Medicaid supplies without defeating the recipient's Medicaid eligibility. By means of such a trust, the sufferer of a long-term disability may enjoy education, rehabilitation, transportation, and other advantages which Medicaid does not cover without losing Medicaid's basic medical benefits. Congress enacted the supplemental needs trust provision as an explicit exception to the general trend of the Omnibus Budget Reconciliation Act ("OBRA") of 1993, which attempted to close loopholes that allowed wealthy elders to reap Medicaid benefits while still retaining their personal wealth and passing it on to the next generation. See generally Stewart Weisner, OBRA '93 and Medicaid: Asset Transfers, Trust Availability and Estate Recovery Statutory Analysis in Context, 19 Nova L.Rev. 679 (1995).
The supplemental needs trust must be structured so that "upon the death of the beneficiary, the state will receive all amounts remaining in the trust, up to an amount equal *443 to the total medical assistance paid on behalf of the beneficiary." Utah Code Ann. § 62A-5-110(1)(a)(vi). The conservators contend that this provision supersedes sections 26-19-5 and -7, which provide for reimbursement to the State when there has been an insurance recovery such as happened here. Thus the conservators argue that the State is not now entitled to reimbursement, but only after S.S.'s death. The State responds that Medicaid is designed to be the payor of last resort and the establishment of a supplemental needs trust does not change the fact that the mandatory assignment of benefits gives the State a lien on any third-party recovery to the extent of the State's expenditures. The State bolsters its argument with reference to 42 U.S.C. § 1396 (1993), under which the states are required to collect reimbursement for Medicaid assistance from liable third parties. Therefore, the State insists that S.S.'s insurance recoveries may be used to fund a supplemental needs trust only after the State has been reimbursed.
The trial court noted that "the specific provisions of the United States Code, the Federal regulations and State laws pertaining to supplemental needs trusts do not require reimbursement of pre-settlement assistance benefits from petitioners to the State of Utah." However, the Utah reimbursement provisions are found in the earlier enacted sections 26-19-5 and -7, and the legislature's failure to explicitly reaffirm an earlier statute when it later enacted section 62A-5-110 does not give rise to a presumption of preemption. Rather, a recently enacted statute will supersede an existing statute only in the instance of an irreconcilable conflict between the two.
Though it is true ... that subsequently enacted statutes generally supersede prior existing ones on the same subject, statutes are not repealed by implication. Even when they seem to overlap in some areas, they should be so construed to give effect to both if possible; and the later statute neither supersedes nor repeals the prior one unless its terms are irreconcilable with the former statute.
Pride Club v. Miller, 572 P.2d 385, 387 (Utah 1977) (citing McCoy v. Severson, 118 Utah 502, 222 P.2d 1058 (1950)). Likewise, a federal statute will preempt a state statute only in the case of an actual conflict unless the federal statute has been shown to preemptively occupy the field, which has not occurred here. We find no irreconcilable conflict here either on the federal or state level, or between the two, because the Medicaid recovery statutes deal with reimbursement, while the discretionary trust statutes address Medicaid eligibility. Thus we may conclude, without doing violence to either statute, that recoveries from third parties liable for the same expenses covered by Medicaid belong to the State, but any remaining balance not owed to the State may be used to fund a properly structured supplemental needs trust. Such a trust will permissibly expand the resources available for the disabled person's care beyond that which the Medicaid eligibility provisions would ordinarily allow without defeating eligibility. In the words of the Cricchio court:
[T]here is no indication that the amendments were designed to alter the legal liability of any responsible third party to reimburse Medicaid for care, which is a cornerstone of the Medicaid program. Rather, the legislative history of the Acts authorizing the creation and favorable treatment of assets held in an SNT reveals that the amendments were prompted by the sole desire to encourage families to undertake long-term financial planning for loved-ones with family assets that were not otherwise earmarked "to reimburse government assistance."
Cricchio, 660 N.Y.S.2d 679, 683 N.E.2d at 305 (citing Bill Jacket, L.1993 c. 433, Mem. in Support.)[2] We therefore hold that repayment of the Medicaid lien from third party settlement funds must precede creation of the supplemental needs trust.

IV. OFFSET AND CREDIT
Finally, the conservators assert that if reimbursement to the State is required, they should be entitled to a partial offset equal to *444 the State's proportionate share of attorney fees and costs. They also contend that they are entitled to a credit for certain support payments made by Richard S. to the State. Since the trial court denied any recovery by the State, these issues were not reached and ruled upon by that court. The conservators are free to raise them on remand.

CONCLUSION
We conclude that the insurance benefits were effectively assigned and that repayment of previous Medicaid expenditures takes priority over the use of the insurance benefits to establish a supplemental needs trust. Therefore, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
Justice ZIMMERMAN and Justice RUSSON concur in Chief Justice HOWE's opinion.
DURHAM, Associate Chief Justice, dissenting:
The majority holds that the State may enforce a statutory lien for past Medicaid benefits on settlement proceeds designated (by court order) for a supplemental needs trust created pursuant to section 62A-5-109(2). I respectfully dissent; that result is contrary to both federal and state law.
Both Congress and the Utah Legislature have enacted provisions explicitly authorizing the sheltering of assets to be used for the care of disabled individuals from execution by the State for past, present, or future Medicaid benefits until after the death of the disabled individual. Those provisions, detailed hereafter, were enacted subsequent to, and separately from, the general provisions contained in OBRA '93 and Utah's Medical Benefits Recovery Act. The explicit protections designed for these sources of support for disabled persons supersede and take precedence over the generic collection schemes otherwise applicable to Medicaid reimbursements. All of the third-party reimbursement provisions on which the State relies in this case are part of the general collection scheme to which the supplemental need trusts provisions are a later, and explicit, exception.
The majority finds "no irreconcilable conflict" between the general reimbursement statutes and the subsequently enacted exceptions for supplemental needs trusts because "the Medicaid recovery statutes deal with reimbursement, while the discretionary trust statutes address Medicaid eligibility." This assertion is not entirely accurate, and certainly not dispositive. The federal exemption language appears in 42 U.S.C. § 1396p(d)(4). Subsection (d) does indeed refer to determining an individual's eligibility for benefits. But subsection (d) is itself a subsection of section 1396p, entitled "Liens, adjustments and recoveries, and transfers of assets." It has five subsections: "(a) Imposition of lien against property of individual on account of medical assistance rendered to him under State plan ...; (b) Adjustment or recovery of medical assistance correctly paid under State plan ...; (c) Taking into account certain transfers of assets ...; (d) Treatment of trust amounts ...; and (e) Definitions." The lien restrictions specified in subsection (a) clearly apply to all of the subsequent paragraphs, some of which also deal with eligibility requirements, but all of which deal with property to which the state can properly look for reimbursement of medical assistance amounts paid or to be paid.
In reading section 1396p in its entirety, it is plain that the entire section was designed by Congress to ensure protection of certain types of property in certain circumstances from attachment by the state during the lifetimes of disabled individuals. The lien prohibitions in subsection (a) are as applicable to subsections (b), (c), and (d) as are the definitions in subsection (e). Critically, those definitions specifically describe the type of assets at issue in this case  settlement proceeds. For section 1396p purposes,
(1) The term "assets", with respect to an individual, includes all income and resources of the individual ..., including any income or resources which the individual is entitled to but does not receive because of action....
. . . .
(B) by a person, including a court or administrative body, with legal authority to *445 act in place of or on behalf of the individual....
Id. § 1369p(e)(1). The settlement proceeds in this case have been ordered by the district court to be placed in a supplemental needs trust established by the properly appointed guardians of S.S. Congress intended such funds to be exempt from attachment during S.S.'s lifetime.
Likewise, it is not the case, as suggested by the majority, that the state statute governing supplemental needs trusts is limited to "eligibility" considerations. Section 62A-5-110 specifically states:
(3) A discretionary trust for a person with disabilities is not liable for reimbursement or payment to the statute or any state agency, for financial aid or services provided to that individual....
(4) Property, goods and services that are purchased or owned by a discretionary trust for a person with disabilities and that are used or consumed by a disabled beneficiary shall not be considered trust property that is distributed to or under the control of the beneficiary.
(5) The benefits that a person with disabilities is otherwise legally entitled to may not be reduced, impaired, or diminished in any way because of contribution to a discretionary trust for that person.
Utah Code Ann. § 62A-5-110(3), (4), & (5) (emphasis added). Only subsection (6) of section 62A-5-110 speaks to eligibility. The foregoing provisions, read cumulatively as they must be, reveal an expansive view of the property to be shielded from any form of lifetime attachment by the State for medical assistance.
The discretionary trust in question in this case was properly created, and the transfer of settlement proceeds duly ordered by the district court. There is no question of S.S.'s eligibility as a beneficiary of such a trust, nor of the propriety of placing personal injury settlement funds in it. There is also, in my view, no question of the intent of the federal provisions and the parallel state statutes to shield whatever assets are properly placed in that trust from reimbursement liens by the State during S.S.'s lifetime. The third-party recovery scheme relied on by the State here is part of the overarching scheme for recovery of medical assistance payments paid in the ordinary case. The supplemental needs of trusts provisions are and were intended to be an explicit, specific, and narrow exception available to persons who are totally disabled  the extraordinary case. It would have been a relatively easy matter for Congress or the State legislature to specify that the recovery exemptions in 42 U.S.C. § 1396p(d) and Utah Code Ann. § 62A-5-110 did not include exemption from the third-party recovery provisions in 42 U.S.C. § 1382 and Utah Code Ann. § 26-19-5. Instead, the exemptions in both the federal and state statutes are blanket exceptions covering all forms of reimbursement, diminution of benefits, liens, or any other process designed to accomplish collection. Once S.S.'s recovery from the persons liable for his injuries was contributed to a properly created supplemental needs trust, the State had no power to attach it until his death, just as is true of any other funds contributed to that trust. The majority agrees with the analysis of the New York Court of Appeals in Cricchio v. Pennisi, 90 N.Y.2d 296, 660 N.Y.S.2d 679, 683 N.E.2d 301, 305 (N.Y.1997), that "there is no indication that the amendments [creating supplemental needs trusts] were designed to alter" the third-party reimbursement provisions. I think there is ample indication that the amendments were intended to shelter supplemental needs trust funds from all of the repayment, reimbursement, and mandatory assignment provisions contained in the earlier statute.
I would therefore affirm the district court.
Justice STEWART concurs in Associate Chief Justice DURHAM's dissenting opinion.
NOTES
[1] Also referred to as a "special needs trust."
[2] "[S]upplemental needs trusts would be created with `funds the State would not obtain to reimburse itself for public assistance in any event.'" Id.