OPINION OF THE COURT
Edward H. Lehner, J.
The questions raised on this motion by plaintiff to vacate a Medicaid lien placed by the Department of Social Services of the City of New York (DSS) against the settlement proceeds in this infant plaintiffs personal injury action are (i) whether DSS is entitled to place a lien on the settlement proceeds of *350 the action, and (ii) if so, is the amount of the lien limited to the portion of the settlement applicable to a recoupment of medical expenses.
This action was instituted to recover damages for personal injuries sustained by infant Alberto Santiago. At a mediation conference the parties agreed to a settlement in the sum of $30,000. On January 26, 1999, and prior to submission of an infant’s compromise order, DSS placed a lien of $14,869.92 against the settlement proceeds pursuant to Social Services Law §§ 104 and 104-b for medical expenses paid on the infant’s behalf as a result of the injuries sustained by him due to the alleged negligence of defendants. Plaintiff contends that subdivision (2) of Social Services Law § 104 bars such a lien.
Discussion
“Medicaid is a jointly funded Federal and State medical assistance program, established by title XIX of the Social Security Act. It pays for necessary medical care for qualifying indigent individuals, whose income and resources are insufficient to meet the costs of their medical care * * *
“Medicaid programs are administered jointly through Federal-State partnerships between the Department of Health and Human Services and the designated State agency. In New York, the designated State agency responsible for the administration of Medicaid is the New York State Department of Social Services. Participating States are mandated to establish a State Medicaid program in accordance with Federal statutory and regulatory requirements. To that end, States are required, among other things, to adopt procedures to prevent fraud, abuse, unnecessary or inappropriate use of Medicaid services and excess payments.” (Matter of Costello v Geiser, 85 NY2d 103, 105-106 [1995].)
In 1993 Congress amended the Social Security Act to provide that in any case where Medicaid payments have been made under a State plan and a third party has a legal responsibility to pay for health care items or services furnished to an individual, “ ‘the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services’ ” (Cricchio v Pennisi, 90 NY2d 296, 305 [1997], quoting 42 USC § 1396a [a] [25] [I]). In Cricchio, the Court further noted (at 305) that the State must also “ ‘take all reasonable measures to ascertain the legal liability of third parties * * * to pay for care and services available under the plan’ ” (quoting 42 USC § 1396a [a] [25] [A]), and must seek *351 reimbursement from such third parties “to ensure that the Medicaid program remain ‘the payor of last resort’ ” (at 305). In summarizing the Federal recoupment requirements, the Court wrote (at 305): “Specifically, as a condition of eligibility, an applicant must assign to DSS any rights he or she has to seek reimbursement from any third party up to the amount of medical assistance paid * * * Additionally, a Medicaid recipient must ‘cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan.’ ”
A specific New York statute empowering DSS to recover amounts paid for public assistance is Social Services Law § 104, subdivision (1) of which provides in part: “A public welfare official may bring action or proceeding against a person discovered to have real or personal property, or against the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property, if such person, or any one for whose support he is or was liable, received assistance and care during the preceding ten years, and shall be entitled to recover up to the value of such property the cost of such assistance or care.”
As an alternative to directly suing the responsible third party for recoupment, in 1964 the Legislature added Social Services Law § 104-b (L 1964, ch 382, § 1), which gives DSS the authority to pursue reimbursement indirectly by placing a lien on personal injury suits brought by a Medicaid recipient against the responsible party. However, subdivision (2) of Social Services Law § 104 imposes the following limitation on the agency’s right to recover from infants: “No right of action shall accrue against [an infant] by reason of the assistance or care granted to him unless at the time it was granted the [infant] was possessed of money and property in excess of his reasonable requirements, taking into account his maintenance, education, medical care and any other factors applicable to his condition.”
The first important case discussing the interplay of subdivision (2) of section 104 and section 104-b is Baker v Sterling (39 NY2d 397 [1976]). There the plaintiff was injured when she was 16 years of age and, as a beneficiary of public assistance, had her hospital expenses paid by DSS. Initially the Court noted (at 405) that section 104-b “is purely procedural” and that “the scope of the remedy is governed by the terms of the statute creating the right”. Hence, it was ruled that the right *352 of DSS “to recover is subject to the limitations imposed by section 104”, with the consequence that “no lien will attach unless the infant possessed money or property in excess of his needs at the time the assistance was granted” (at 405). The Court found that the accrual of a cause of action for personal injuries constituted “property” possessed by the infant at the time the assistance was granted, and hence satisfied one portion of the statutory criteria for the imposition of a lien. The Court then went on to discuss whether the payment of the settlement constituted property “in excess of his reasonable requirements.” Finding (at 405-406) that a pain and suffering award for personal injuries “can never be considered ‘money or property in excess of his reasonable requirements,’ ” it was determined that a lien would not attach to such portion of the award. However, a contrary conclusion was reached with respect to the payment of medical expenses as it was held that such “expenditure involved no loss to the infant [and that hence] this portion of the award must be considered ‘excess’ funds within the meaning of the statute [and that hence the portion of the settlement of the infant’s claim] which represents a compromise of the claim for medical expenses is subject to lien and recovery by the Department” (at 406). Since the record was not clear as to whether the settlement included reimbursement for medical and hospital expenses, the claims were remanded to the trial court “to determine whether the settlement of the infant’s cause of action included reimbursement for medical and hospital expenses incurred and, if appropriate, the reasonableness of the asserted lien” (at 407).
As a consequence of this decision it was widely thought for years that so long as an infant’s settlement only provided compensation for pain and suffering, a Medicaid lien would not attach thereto.
In Matter of Thurston v Durose (76 NY2d 683 [1990]), it was held that the proceeds of a personal injury action are subject to a Medicaid lien for expenditures made on the plaintiff’s behalf after he became 21 years of age even though the injury sustained occurred prior to his reaching that age.
In Cricchio v Pennisi (supra) (a case that did not involve an infant), the Court of Appeals ruled in 1997 that Medicaid liens for medical expenses must be fully satisfied before the proceeds of a personal injury settlement may be transferred to a supplemental needs trust, with the Court leaving open for future decision the question as to “whether the entire amount of the personal injury settlement or only that portion attribut *353 able to past medical expenses is available to satisfy the lien” (at 309-310).
In discussing the New York statutory scheme, the Court noted that Social Services Law § 367-a (2) (b) provides that DSS “ ‘shall be subrogated, to the extent of [its] expenditures * * * for medical care furnished, to any rights such person may have to medical support or third party reimbursement,’ ” and that 42 USC § 1396k provides that “when reimbursement is sought from responsible third parties through the assignment provisions, States are to first ‘retain’ that portion ‘of any amount collected * * * as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed’ ” (at 305-307). It was then stated (at 307):
“This provision indicates that the government has priority in recouping funds from third parties who are liable for a Medicaid recipient’s medical expenses, and that only the remainder of those funds becomes available to the Medicaid recipient for placement in a trust or other uses.
“This recoupment hierarchy follows necessarily from the assignment and subrogation scheme. As the Medicaid recipient’s assignee * * * DSS obtains all of the rights that the recipient has as against the third party to recover for medical expenses, including the ability to immediately pursue those claims against the third party. Because the injured Medicaid recipient has assigned its recovery rights to DSS, and DSS is subrogated to the rights of the beneficiary * * * the settlement proceeds are resources of the third-party tortfeasor that are owed to DSS. Accordingly, the lien on the settlement proceeds attaches to the property of the third party.”
In footnote 4 of the decision (at 307-308), it was noted that Baker v Sterling (supra, at 405 [which held that section 104-b is a “purely procedural” statute and that the right of DSS to recover was “subject to the limitations imposed by section 104”]) does not call for a contrary result as “the right to recover from responsible third parties at issue is not derived from section 104, but rather from the assignment, subrogation, and recoupment provisions created by 42 USC §§ 1369a and 1369k, and Social Services Law § 366 (4) (h) (1) and § 367-a (2) (b) [and that] [accordingly, any limitations found in section 104 * * * are not relevant here.”
Answering the question left open in Cricchio (supra), the Court in Calvanese v Calvanese (93 NY2d 111 [1999]) recently held that a Medicaid lien attaches to the entire settlement *354 amount and not just that portion allocated to prior medical expenses. In so ruling, the Court reviewed the Federal statutory scheme referred to above and stated that “New York’s assignment, subrogation and lien provisions effectuate these Federal mandates by imbuing the Department [of Social Services] with broad authority to pursue any amount of third-party reimbursement to which appellants are entitled” (at 118).
In response to the contention that allowing a Social Services Department to satisfy a Medicaid lien from all settlement proceeds will, in the long run, decrease recovery on Medicaid liens because recipients will have no incentive to settle weak claims for less than the amount of the lien and will thus force such cases to trial where no recovery may eventuate, the Court observed (at 121) that this “argument ignores the public welfare official’s powers to both fix the amount of the lien and to release and discharge it * * * [and that] [i]n order to facilitate settlement, the agency may agree to reduce the amount it will accept in satisfaction of its lien”. The Court concluded (at 121): “This ability to settle, however, does not affect the agency^s entitlement to full recovery when sufficient funds are made available by a responsible third party. To conclude otherwise would be to jeopardize Medicaid’s status as a ‘payor of last resort,’ and to ignore limits on public resources available to fund the program.”
In the one reported case located since the Calvanese decision (supra) in April of this year, the Supreme Court in Cortland County ruled in Temple v Doran (181 Misc 2d 637) that the rule of Calvanese (which did not involve an infant) does not apply to an action where the injured party is under 21 years of age. The court concluded that section 104 (2) still governs a settlement involving such a plaintiff, and that since it appeared that no portion of the settlement proceeds were intended to compensate the infant for his past medical expenses, the lien did not attach thereto. In light of the foregoing rulings of the Court of Appeals, I must disagree with the conclusion reached in this case. The lien asserted herein, as were the liens asserted in Cricchio (supra) and Calvanese, may be enforced pursuant to the aforesaid assignment, subrogation and recoupment provisions of the Social Services Law, mandated by Federal law. There is nothing in said statutes that would make the provisions thereof inapplicable to Medicaid payments made on behalf of an infant. Accordingly, the motion of the plaintiff to vacate the Medicaid lien is denied.
*355 The effect of the foregoing conclusion is that prior to settling a case involving an infant, an attorney should determine the amount of any lien and attempt to negotiate a reduction thereof as he or she would if the plaintiff were an adult.