Joan MARTIN, guardian ad litem
for Troy HOFF, Respondent,

and

State of Minnesota, plaintiff on
impleader, Appellant,

v.

CITY OF ROCHESTER,
et al., Defendants.

No. C3–00–398.

Court of Appeals of Minnesota.

Aug. 15, 2000.

Review Granted Oct. 17, 2000.

Charles A. Bird, Bird & Jacobsen, Rochester (for respondent Martin).

Mike Hatch, Attorney General, Suzette C. Schommer, Assistant Attorney General, St. Paul (for appellant).

Michael A. Bryant, Bradshaw & Bryant Law Offices, Waite Park (for amicus curiae Minnesota Trial Lawyers Association).

Considered and decided by HALBROOKS, Presiding Judge, DAVIES, Judge, and PETERSON, Judge.

## OPINION

DAVIES, Judge

The state claims that the district court erred in finding that Minnesota's medical-assistance lien provision is in conflict with federal Medicaid law. Because we find that compliance with both state and federal law is possible, we reverse.

## FACTS

Troy Hoff suffered brain damage in a motor-vehicle accident and was permanently disabled. Respondent Joan Martin, Hoff's mother, applied for and received medical assistance on Hoff's behalf and, under Minnesota statutes, assigned Hoff's rights to any insurance recovery to appellant State of Minnesota.

Respondent then brought a personal-injury action against the City of Rochester and others on behalf of her son. Under Minn.Stat. § 256.015, the state filed a lien against this action to secure reimbursement of medical expenses it had paid to treat his injuries. The district court held that Minn.Stat. § 256.015 was invalid because it conflicted with 42 U.S.C. §§ 1396k and 1396p, and, thus, the federal statute preempted the state statute. On appeal, the state contends there is no preemption and the federal statute does not bar the state from placing a lien on the tort recovery.

## ISSUES

I.   Does federal law allow the state to impose a lien on a third-party tort settlement to secure reimbursement of medical assistance paid?

II.   Is this court required to strike appellant's appendix as outside the record?

## ANALYSIS

### I.

■ The preemption doctrine stems from the Supremacy Clause of the United States Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. According to the preemption doctrine, conflicts between federal and state law are to be resolved in favor of federal law. *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

■ Minnesota's three-part analysis to determine whether a federal statute preempts operation of a state statute looks at whether: (1) compliance with both the federal and state provisions is impossible; (2) preemption is express and unequivocal in the language of the federal statute; and (3) congressional preemptive intent is implicit in the overall scheme of federal and state regulation. *Highland Chateau, Inc. v. Minnesota Dep't of Pub. Welfare*, 356

N.W.2d 804, 809–10 (Minn.App.1984), *review denied* (Minn. Feb. 6, 1985). The question in this case is whether compliance with both federal and state law is possible.

■■■ The relevant federal statute provides:

No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan * * *.

42 U.S.C. § 1396p(a)(1) (1994). Another federal provision, however, directs the states to require that an individual receiving medical assistance must assign his rights to "payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A) (1994).

The state lien statute provides that the state shall have a lien for the cost of medical care against "any and all causes of action." Minn.Stat. § 256.015 (Supp.1999). Respondent asserts that this provision violates the foregoing federal statute because it provides for a lien against the property of Hoff before his death.[1] Respondent argues that, although the state may seek reimbursement directly from a third party who is legally liable for the injuries resulting in medical care, it may not proceed as it did in the instant case by asserting a lien against the recipient's "property", i.e., their cause of action.

The Utah Supreme Court recently addressed this issue in *Wallace v. Estate of Jackson,* 972 P.2d 446 (Utah 1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 42, 145 L.Ed.2d 38 (1999), and a companion case, *S.S. v. State,* 972 P.2d 439 (Utah 1998). The Utah court was presented with a challenge to the state's ability to assert liens against a Medicaid recipient's third-party tort recovery. That court upheld the statute by finding that

payments made by a third party do not legally become the property of the recipient until after a valid settlement which must include reimbursement to the State for Medicaid benefits.

*Wallace,* 972 P.2d at 448.

In upholding the Utah lien statute, the Utah court relied in part on a decision by the New York Court of Appeals in *Cricchio v. Pennisi,* 90 N.Y.2d 296, 660 N.Y.S.2d 679, 683 N.E.2d 301 (1997), which stated that

settlement proceeds are resources of the third-party tortfeasor that are owed to [the state]. Accordingly, the lien on the settlement proceeds attaches to the property of the third party, and thus does not violate the statutory prohibition against imposing a lien against a beneficiary's property until after his or her death. The flaw in plaintiffs' theory that the lien cannot be satisfied until the recipient's death is that it fails to appreciate this critical distinction between the assets of a responsible third party and assets belonging to the Medicaid recipient.

*Id.* at 305 (citations omitted).

The Second Circuit recently reached the same result, but on a rationale we find more persuasive. The Second Circuit stated:

Pursuant to federal law, Medicaid recipients must assign to the state their rights to seek and collect payment for medical care from a responsible third party. As part of its recoupment power, the [state agency] administering Medicaid may

---

1. The lien provision, in relevant part, reads: When the state agency provides, pays for, or becomes liable for medical care or furnishes subsistence or other payments to a person, the agency shall have a lien for the cost of the care and payments on any and all causes of action or recovery rights under any policy, plan, or contract providing benefits for health care or injury which accrue to the person to whom the care or payments were furnished, or to the person's legal representatives, as a result of the occurrence that necessitated the medical care, subsistence, or other payments. Minn.Stat. § 256.015, subd. 1 (Supp.1999). A similar provision is found at Minn.Stat. § 256B.042, subd. 1 (Supp.1999).

place a lien on the Medicaid recipient's personal injury claims against a tortfeasor in order to recover the agency's medical expenditures. [These] liens enjoy a specific exemption from the general rule that the state may not encumber a Medicaid recipient's property prior to death.

*Sullivan v. County of Suffolk,* 174 F.3d 282, 285 (2d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 372, 145 L.Ed.2d 290 (1999) (citations omitted).

In *Norwest Bank v. Doth,* 159 F.3d 328 (8th Cir.1998), the Eighth Circuit, while applying Minnesota law, found that

a state may require a Medicaid lien imposed on the proceeds of a personal injury award or settlement to be satisfied before the remaining funds are placed in [a trust].

*Id.* at 333. The Eighth Circuit, however, declined to address the specific preemption issue before this court.

The Minnesota medical-assistance-recovery statute contemplates alternative procedures that the state may utilize to recover reimbursement of medical assistance. The state may either bring its own action or impose a lien on any recovery the medical-assistance recipient might gain in the recipient's own action. The lien is simply a device to protect the state's legitimate subrogation interest. This lien does not have the effect of allowing the state to make a claim on property that is not connected to the medical assistance it has provided. Further, the lien allowance does not prevent all recovery to the injured party. Under the lien procedure, the plaintiff is guaranteed "at least one-third of the net recovery after attorney fees and other collection costs." Minn.Stat. § 256.015, subd. 5 (1998).[2]

Minnesota's medical-assistance statute, thus, does not conflict with the federal Medicaid statutory scheme. *See In re Es-*

*tate of Turner,* 391 N.W.2d 767, 770 (Minn. 1986) (medical assistance serves system "whereby money paid to qualified individuals for health care purposes may be recovered and reused to help other similarly situated persons").

## II.

■ Respondent asks this court to strike a portion of appellant's appendix. The challenged materials consist of: (1) the testimony of Mike Hash, Deputy Administrator for HCFA, before the Senate Appropriations Subcommittee on Labor, HHS, Education, and related agencies dated March 15, 1999; (2) a pamphlet titled "Third Party Liability in the Medicaid Program," a guide to successful state-agency practices; and (3) the State Medicaid Manual. This information consists only of general information concerning Minnesota's medical-assistance program and is a matter of public record.

[There is] no reason why a party may not submit such a report to us as part of its brief when we could refer to such a report in the course of our own research, if we were so inclined.

*See id.* at 771 (denying motion to strike report consisting of general information about state medical assistance finding it matter of public record). Accordingly, respondent's motion to strike that portion of appellant's appendix is denied.

## DECISION

Minnesota's medical-assistance-lien statute is not in conflict with federal law. The third-party tort settlement is subject to a state subrogation claim for medical assistance that has been paid. Under state law, the subrogation claim may be protected by a lien.

**Reversed.**

2. The provision, in relevant part, reads: "The plaintiff, however, must receive at least one-third of the net recovery after attorney fees and other collection costs." Minn.Stat. § 256.015, subd. 5.