■ ˙WANDA SCHIDZICK et al., Appellants, v LEAR SIEGLER, INC., et al., Respondents, et al., Defendants. [635 NYS2d 323] —Yesawich Jr., J. Appeal from an order of the Supreme Court (Lynch, J.), entered March 31, 1994 in Schenectady County, which, *inter alia*, granted motions by defendants Lear Siegler, Inc. and Mohawk Heating Company, Inc. for summary judgment dismissing the complaint against them.

Plaintiff Wanda Schidzick (hereinafter Schidzick) and her husband, derivatively, seek damages for serious injuries Schidzick sustained as a result of carbon monoxide poisoning, on February 29, 1988, while sleeping in a mobile home owned by defendant Patricia Horinka. The excessive levels of carbon monoxide apparently emanated from the furnace, which was manufactured by defendant Lear Siegler, Inc. Though initially an oil-burning unit, it had been converted to natural gas use in 1979 by defendant Mohawk Heating Company, Inc., at the request of a former owner of the home. Plaintiffs contend that the buildup of carbon monoxide was caused by negligence at the time of the conversion or by a defective roof jack (vent) cap, provided by Lear Siegler, which was the subject of a safety recall beginning in 1986. Plaintiffs' claims against Lear Siegler and Mohawk Heating (hereinafter collectively referred to as defendants), sounding in negligence, strict products liability and breach of warranty, were dismissed by Supreme Court on defendants' motions for summary judgment, and this appeal followed.*

Summary judgment was properly granted to defendants. Lear Siegler's contention that the furnace in question was not included in the recall program, because it was originally an oil-burning unit, is contradicted by the record. Nevertheless, it has demonstrated through the deposition testimony of Martin Longhi, who replaced the cap several months after the accident in accordance with the recall procedure, that although the cap was rusty at that time and needed replacement, it had not collapsed and was not obstructing the flue or otherwise causing any condition that would result in the passage of carbon monoxide into the mobile home. In further support of its position, Lear Siegler adverts to the testimony of several employees of Niagara Mohawk and Mohawk Heating who were summoned to the home immediately after the accident. Upon investiga-

---

* Although plaintiffs' notice of appeal purports to be from each and every part of Supreme Court's order, they have not briefed, and thus are deemed to have abandoned, any challenge to those portions of the order awarding summary judgment to several of the other defendants (*see, Slomin v Skaarland Constr. Corp.*, 207 AD2d 639, 641).

tion, they discovered two problems, blocked vents and a misadjusted air intake valve—the correction of which alleviated the atmospheric contamination—and noted that the venting of the furnace through the chimney appeared to be unimpeded. The conclusion to be drawn from these facts is that the flaw that precipitated the roof cap recall was not a proximate cause of this accident.

In response, plaintiffs rely on the fact of the recall, which Lear Siegler does not dispute occurred, together with the testimony of Michael Russell, a furnace technician and installer, who inspected and ultimately replaced the furnace in question in May 1988. Russell's testimony on the subject of venting and possible problems with the flue is, however, entirely speculative; he states that he made no particular observations of the furnace chimney or venting, and that the carbon monoxide buildup "could have" been caused by, *inter alia*, "a blocked flue, which could be caused by a defective roof cap". Neither his testimony, nor the fact that the cap was recalled because of the possibility that it might cause a dangerous situation to develop, controverts the evidence submitted by defendants, attesting that nothing was actually blocking the flue at any pertinent time (*cf.*, *Trotman v Caiola*, 160 AD2d 209, 210).

As for plaintiffs' contention that Lear Siegler's motion must be denied because the cap itself was destroyed, in accordance with the company's general directions, after it was replaced, it suffices to note that the replacement occurred several months before this action was commenced, and there is no indication that Lear Siegler deliberately caused the destruction of the roof cap at a time when it was, or should have been, aware of a need to preserve it for future litigation (*cf.*, *Hallock v Bogart*, 206 AD2d 735, 736).

Nor do plaintiffs' submissions raise any material question of fact with respect to Mohawk Heating's liability. To establish its blamelessness, Mohawk Heating relies on the aforementioned evidence that the leakage of carbon monoxide was caused, not by any defect, deterioration or malfunction of the furnace itself, but by vents clogged with insulation and dust, and a misadjusted valve. In addition, it has proffered the affidavits of its owner and an employee who performed the conversion, who aver that the burner gun installed at that time was a proper model for the furnace and was still present on the day of the accident, that the furnace operated properly immediately after the conversion and that no problems had been reported during the intervening nine years.

In opposition, plaintiffs again rely on Russell's affidavit and deposition testimony, in which he states that when he was called to the mobile home on May 23, 1988 because of problems with the furnace, he discovered that it had been fitted, in a makeshift manner, with an improper burner gun (not of the type that was assertedly installed by Mohawk Heating in 1979 and observed to be in use on the day of the accident by its employee, as well as by Niagara Mohawk employees), which prevented the door from closing properly, and that a cutoff switch, intended to be triggered when the door was opened, had been taped into the "on" position. On the basis of these observations, he opined that the oil to gas conversion had been negligently performed, and that as a result the furnace was drawing air from other parts of the home, causing a buildup of carbon monoxide. However, plaintiffs have not tendered any proof that the furnace was not modified during the three months between the accident and Russell's inspection, and therefore that the conditions he observed were in existence at the earlier date. Notably, Russell admitted at his deposition that he did not know who had installed the improper burner gun and taped the door, or when these acts had occurred. Nor did he know whether anyone had access to the furnace after the incident (the mobile home had changed hands shortly thereafter). Given this, neither Russell's statements, fully credited, nor the opinions of Jerome Levine, which were based on Russell's observations, support an inference that Mohawk Heating's negligence caused the injuries for which plaintiffs seek to recover.

Cardona, P. J., White, Casey and Spain, JJ., concur. Ordered that the order is affirmed, with one bill of costs.