[701 NYS2d 123]

ABRAHAM GOLD, an Infant, by KATHLEEN A. GOLD, His Mother and Guardian, et al., Appellants, v UNITED HEALTH SERVICES HOSPITALS, INC., Doing Business as CHARLES S. WILSON MEMORIAL HOSPITAL, et al., Defendants. NEW YORK STATE OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES et al., Respondents.

Third Department, December 9, 1999

68

## APPEARANCES OF COUNSEL

*Gair, Gair, Conason, Steigman & Mackauf,* New York City (*Rhonda E. Kay* of counsel), for appellants.

*Eliot Spitzer, Attorney General,* Albany (*Kathleen M. Treasure* of counsel), for New York State Office of Mental Retardation and Developmental Disabilities, respondent.

*Howard Schultz,* Binghamton, for Broome County Department of Social Services, respondent.

## OPINION OF THE COURT

GRAFFEO, J.

Plaintiff Kathleen A. Gold commenced this medical malpractice action, individually and on behalf of her son, Abraham J. Gold (hereinafter the infant), against defendants for neurological injuries sustained by the infant at the time of his birth in 1992. The infant, who suffers from spastic quadriplegic cerebral palsy, was admitted to Broome County Developmental Center on June 1, 1994 and has remained as a 24-hour residential patient at that facility ever since. His medical expenses have been paid by Medicaid through the State Office of Mental Retardation and Developmental Disabilities (hereinafter OMRDD) and the Broome County Department of Social Services (hereinafter BCDSS). During pendency of the lawsuit, OMRDD and BCDSS filed liens pursuant to Social Services Law § 104-b for the recovery of medical assistance benefits provided to the infant.

While the jury was engaged in its deliberations of this case, plaintiffs and defendants entered into a stipulation regarding the maximum and minimum range of damages to be awarded. The "high-low" agreement provided a $5,000,000 defense liability cap and a base amount of $450,000 that plaintiffs would receive in the event of a defense verdict or a lower award. The jury eventually returned a verdict in plaintiffs' favor in the amount of $103,127,355.20 against defendant United Health Services Hospitals, Inc., comprised of $1,784,680.20 for past medical expenses, representing the combined amount of the Medicaid liens,[1] $91,342,675 for future medical and rehabilitative care, $5,000,000 for past pain and suffering, and $5,000,000 for future pain and suffering. The jury made no award to the infant's parents for loss of the child's services.

Because plaintiffs' recovery was limited to $5,000,000 under the terms of the "high-low" agreement, plaintiffs moved for an order seeking, *inter alia*, a reduction in the amount of the settlement proceeds allocated to repay the Medicaid liens.[2] Taking into account counsel fees and expenses, plaintiffs sought to allocate $400,000 to the infant's parents for loss of services and to place the remainder of the proceeds in a supplemental needs trust for the benefit of the infant. Noting that the parties' stipulation made no provision for the recoupment of the liens and failed to allocate the proceeds among plaintiffs' causes of action, Supreme Court, in a thorough analysis, denied plaintiffs' motion with respect to decreasing the amount allocated to repayment of the Medicaid liens and providing any loss of services compensation. After deducting the amount of the liens ($1,784,680.20), disbursements ($61,510.29), and counsel fees ($643,848.97) from the settlement proceeds, the court allocated $2,173,625.83 for future care and the remaining balance of $336,334.71 was reserved for a supplemental needs trust.[3]

■ Plaintiffs appeal, primarily contending that Supreme Court erred when it denied their motion to reduce the Medicaid

---

**1.** The extent of the two Medicaid liens for medical assistance expenditures on behalf of the infant had been placed in evidence during the trial.

**2.** Plaintiffs' motion before Supreme Court sought a reduction of the Medicaid liens to $101,791.96, a proportionate reduction based on the settlement amount. On appeal, plaintiffs now request a reduction to $103,000 by applying a different percentage. Utilizing either formula, the calculation results in a reduction to $103,122.56.

**3.** Supreme Court's allocation with respect to future care and the supplemental needs trust was predicated on the respective proportionate share of these damage items in the jury's verdict. The court calculated that the jury's award of $74,955,710 for future care was 86.6% of the total present

liens in proportion to the reductions applied to the other categories of damages. The pivotal issue on appeal is whether the full amount of a personal injury settlement from a third-party tortfeasor is available to satisfy a Medicaid lien for expenditures made on behalf of an infant or if recovery is limited to only that portion of the settlement proceeds attributable to compensation for past medical services. Under the circumstances presented in this case, we conclude that OMRDD and BCDSS may recoup the liens in full from the settlement proceeds.

As a condition of Medicaid eligibility, recipients are required to assign to the appropriate Social Services district the right to seek reimbursement from a responsible third party (*see,* Social Services Law § 366 [4] [h] [1]). Social Services Law § 367-a (2) (b) provides that "the local social services district or the department shall be subrogated, to the extent of the expenditures by such district or department for medical care furnished, to any rights such person may have to * * * third party reimbursement." As an alternative to commencing a direct cause of action for such reimbursement, a local Social Services agency may enforce its rights by placing a lien on the proceeds of a personal injury lawsuit instituted against a liable third party (*see,* Social Services Law § 104-b; *Calvanese v Calvanese,* 93 NY2d 111, 117).

The Court of Appeals in *Calvanese v Calvanese* (*supra,* at 118-119) determined that a Medicaid lien filed pursuant to Social Services Law § 104-b may be satisfied out of the entire proceeds of a Medicaid recipient's personal injury settlement. Specifically rejecting the argument that recoupment is limited to that portion of the settlement allocated to past medical expenses, the Court held that a Medicaid lien was recoverable despite the absence of any specific amount attributed to repayment of the lien (*see, id.*). Reasoning that Social Services Law § 366 (4) (h) (1) and § 367-a (2) (b) were enacted to ensure that Medicaid would be the "payor of last resort", the Court of Appeals determined that State and local lienholders are entitled to pursue repayment to the extent of " '*any rights* such person may have to * * * third-party reimbursement' " (*id.,* at 118-

---

value of the verdict ($86,531,999.20). After the Medicaid liens, counsel fees and disbursements were deducted from the settlement proceeds, the court deemed 86.6% of the balance allocable to the child's postverdict medical and custodial care ($2,173,625.83), and all remaining proceeds ($336,334.71) were designated for a supplemental needs trust. This effectuated Supreme Court's desire to retain the jury's allocation of damages notwithstanding the reduction of the total award to $5,000,000.

119, quoting Social Services Law § 367-a [2] [b] [emphasis in original]).

On the heels of the *Calvanese* decision, the case before us seeks to establish a limitation on lien recoupment by contending that the settlement at issue is distinguishable from *Calvanese* because the injured party is an infant. Plaintiffs rely upon Social Services Law § 104 (2) and the Court of Appeals' decision in *Baker v Sterling* (39 NY2d 397) in urging that the right of lien recovery is limited for infant Medicaid recipients.

Pursuant to Social Services Law § 104 (1), a public welfare official is authorized to commence an "action or proceeding against a person discovered to have real or personal property * * * and shall be entitled to recover up to the value of such property the cost of such assistance or care." These recovery rights are limited with respect to recipients under the age of 21, unless the infant "was possessed of money and property in excess of his [or her] reasonable requirements" at the time the infant received aid from the State (*see*, Social Services Law § 104 [2]). Finding the local agency to be subrogated to the recipient's rights, the Court of Appeals in *Baker (supra)* found that the Social Services Law § 104 (2) limitation applied to that portion of an infant's settlement attributable to compensation for pain and suffering because such funds were intended to meet the anticipated needs of the infant as a result of the injury sustained (*see*, *Baker v Sterling, supra*, at 405-406). Hence, awards compensating an infant for his or her loss were not "excess property" within the meaning of the statute. As a consequence of this distinction, the Court found that the "portion of the settlement which represents a compromise of the claim for medical expenses is subject to lien and recovery by the Department. That portion representing a compromise of the infant's claim for personal injury is beyond the Department's reach" (*id.*, at 406).

Notably, *Baker* was decided prior to the enactment of Social Services Law § 366 (4) (h) (1) and § 367-a (2) (b), which statutes address, *inter alia*, eligibility for medical assistance and reimbursement from liable third parties.[4] Although the facts of the case at bar and *Baker* are similar inasmuch as both plaintiffs were under the age of 21, the limitations of Social

---

4. The Federal provisions governing the State's medical assistance program are set forth in title XIX of the Social Security Act (42 USC § 1396 *et seq.*) and the United States Department of Health and Human Services regulations, administered through the Health Care Financing Administration, are found at 42 CFR 430.0 *et seq.*

Services Law § 104 (2) are not controlling in the instant case since the assignment, subrogation and recoupment rights derive not from the general provisions of Social Services Law § 104, but from Social Services Law § 366 (4) (h) (1) and § 367-a(2) (b). Neither of these statutes contains a provision manifesting an intent to treat infants differently from adult medical assistance recipients regarding the recoupment of expenditures made for their care. Although the liens, as vehicles for the recovery of public moneys expended, were initiated in accordance with Social Services Law § 104-b, that statute is a "purely procedural" mechanism providing an alternative to the commencement of a direct action (*Calvanese v Calvanese, supra,* at 117; *Cricchio v Pennisi,* 90 NY2d 296, 306; *Baker v Sterling, supra,* at 405).

Furthermore, the *Baker* Court recognized that "the scope of the remedy is governed by the terms of the statute creating the right" (*Baker v Sterling, supra,* at 405), and the subrogation and recoupment authority now sought to be enforced emanates from statutes other than that which the *Baker* Court relied upon. As we find no basis to depart from the holdings of *Calvanese (supra)* and *Cricchio v Pennisi (supra)* in connection with lien recovery against the proceeds of a settlement for the benefit of an infant from a responsible third party as authorized under Social Services Law § 366 (4) (h) (1) and § 367-a (2) (b), Supreme Court was correct in deeming the entire settlement amount available to satisfy the Medicaid liens (*but see, Matter of Thurston v Durose,* 76 NY2d 683, 686-687).[5]

We next consider whether Supreme Court erred when it determined that $2,173,625.83 from the settlement proceeds was to be reserved to provide for the infant's future custodial and medical care. Plaintiffs argue that after satisfaction of the liens and distributions for counsel fees and disbursements, the remaining funds should have been allocated to a supplemental needs trust, insulated from Medicaid repayment until the death of the recipient. CPLR 1206 grants the court discretionary power to distribute an infant's settlement funds to his or her guardian for the "use and benefit of [the] infant," and provides the court with the authority to order the disposition of the proceeds. We find that this discretionary power is not restricted or qualified by any of the applicable statutes and, therefore,

___

5. Although the Court of Appeals in *Matter of Thurston v Durose (supra)*, in dictum, referenced the applicability of Social Services Law § 104 (2) to minors, that case did not involve an infant and did not address the interplay between Social Services Law § 104 and Social Services Law §§ 366 and 367-a.

Supreme Court's finding as to the allocation of the infant's settlement funds should not be disturbed unless an abuse of discretion is extant. As Supreme Court's use of the jury's allocation of damages in determining the proportionate future custodial and medical care component of the settlement, i.e., 86.6% of the present total value verdict attributable to future care of the infant, was reasonable and consistent with the Court of Appeals' analysis of legislative intent (*see, Cricchio v Pennisi, supra,* at 308), Supreme Court's allocation of $2,173,625.83 to future care and $336,334.71 to a supplemental needs trust was not an abuse of discretion.

MERCURE, J. P., PETERS, SPAIN and CARPINELLO, JJ., concur.

Ordered that the order is affirmed, without costs.