202

[716 NYS2d 86]

CHRISTINA CARPENTER and Another, Infants, by KEVIN McALLISTER, as their Natural Guardian, et al., Respondents, v SALTONE CORPORATION et al., Defendants. WESTCHESTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Nonparty Appellant.

Second Department, November 13, 2000

## APPEARANCES OF COUNSEL

*Alan D. Scheinkman, County Attorney*, White Plains (*Stacey Dolgin-Kmetz* and *Deborah A. Porder* of counsel), for nonparty appellant.

*Schneider, Kleinick, Weitz, Damashek & Shoot*, New York City (*Brian J. Shoot* and *Diane Welch Bando* of counsel), for respondents.

## OPINION OF THE COURT

Bracken, J. P.

The proceeds of a settlement of a personal injury action obtained on behalf of an infant are subject to statutory Medicaid liens, at least to the extent that such proceeds represent a compromise of the infant's claim for medical expenses (*see, Baker v Sterling,* 39 NY2d 397). The argument may well be made that, in light of changes in the statutory law since the time of the decision in *Baker v Sterling (supra),* all of the proceeds of such a settlement, and not only the portion thereof attributable to medical expenses, are available for the satisfaction of such liens (*see, Santiago v Craigbrand Realty Corp.,* 268 AD2d 28; *Gold v United Health Servs. Hosps.,* 261 AD2d 67). However, the appellant, having advanced this argument in the Supreme Court, has in effect abandoned it on appeal. A basic sense of fairness to the plaintiffs-respondents precludes us from passing on that argument at this time. However, we do agree with the far more limited argument which the appellant does assert, that is, that the representatives of an infant plaintiff, on whose behalf a settlement of a personal injury action has been reached, may not completely defeat enforcement of the Medicaid lien by the simple expedient of declaring that the settlement related solely to the infant's claim for pain and suffering. Considering that further proceedings are necessary in any event, we also conclude that the appellant should be granted leave to renew its opposition to the motion to vacate the Medicaid lien in light of the recent caselaw which neither party had an opportunity to brief on this appeal (*see, Santiago v Craigbrand Realty Corp., supra; Gold v United Health Servs. Hosps., supra*).

The infant plaintiffs, Christina and Jeffrey Carpenter, by their natural guardian Kevin McAllister, and Mr. McAllister individually, commenced this action against the defendants Saltone Corporation and Antonio Pedro by the filing of a summons and complaint in the office of the County Clerk of Westchester County on October 11, 1995. The complaint alleges, among other things, that Saltone Corporation and Pedro were responsible for the operation and maintenance of certain apartments located in Westchester County, including the apartment in which the infant plaintiffs resided. The complaint alleges that the infant plaintiffs were each "caused to ingest, consume and/or be exposed to lead paint and/or dust which was upon and/or caused, allowed and permitted to chip, peel, fall and/or permeate the premises from the interior walls and portions of said apartment."

In the first and third causes of action, it was alleged that as a result of the infants' ingestion of these noxious substances, they were severely injured and suffered "great physical pain." It was also alleged that each of the infants "incurred and in the future [would] necessarily incur further hospital and/or medical expenses in an effort to be cured." In the second and fourth causes of action, it was alleged that Kevin McAllister had, on account of the injuries to the two infants, "been required to expend various sums of money for extraordinary medical care, consultation, advice, therapy, education, management and treatment of the infant[s]." The appellant advises that the second and fourth causes of action, that is, the two causes of action asserted on behalf of Mr. McAllister, were discontinued.

Under cover of two letters dated July 20, 1998, a representative of the Division of Liens and Recovery of the Office of Revenue and Investigation of the Human Resources Administration of the City of New York forwarded to the attorneys for the infant plaintiffs two detailed lists itemizing the payments which had been made on their behalf pursuant to the Medicaid program. These documents placed, or at least should have placed, the attorneys on notice of the extent of the lien which would be asserted pursuant to the governing statutes.

By letter dated October 13, 1998, the attorneys for the infant plaintiffs wrote to the attorneys for the defendants, stating, "[t]his is to confirm the settlement in the amount of $1,300,000 for Jeffrey Carpenter and Christina Carpenter. It is also to confirm that the settlement is for pain and suffering, and *not* for medical expenses, and that such settlement will be confidential."

By virtue of a "notice of lien" dated November 2, 1998, McAllister, as well as the attorneys representing him and the infant plaintiffs, the defendants, and the defendants' attorneys, were notified that the Commissioner of the Westchester County Department of Social Services (hereinafter the DSS) was asserting a lien in the sum of $132,204.73 to be satisfied out of the proceeds of the settlement noted above. The defendants assert that this was their first notice of any such lien.

The plaintiffs then moved to extinguish any lien claimed by the DSS "for Medicaid payments and/or welfare payments on behalf of the infant plaintiffs." In an affirmation in support, an attorney for the plaintiffs asserted that pursuant to Social Services Law § 104, "[u]nless the infant possessed money or property in excess of his needs at the time the assistance was granted, no right will accrue and no lien will attach." Also, referring to the letter dated October 13, 1998, noted above, counsel asserted that "the settlement [was] for past, present and future pain and suffering of each infant plaintiff, and not for medical expenses."

An Assistant County Attorney submitted an affirmation in opposition. She asserted that the DSS had provided Medicaid benefits in the total sum of $87,176.74 to Christina Carpenter, and in the total sum of $45,027.99 to Jeffrey Carpenter. She argued, "[p]ursuant to 42 USC § 1396k (a) (1) (A) and [Social Services Law] § 366 (4) (h) (1), as a condition of Medicaid eligibility, the plaintiffs must assign to [the] DSS their rights to recover from any third parties who were responsible for their injuries." She also argued that "[p]ursuant to 42 USC § 1396k (a) (1) (A) and [Social Services Law] § 367-a (2) (b), [the] DSS has been subrogated, to the extent of its expenditures for medical care furnished, to any rights Jeffrey Carpenter and Christina Carpenter may have to * * * third party reimbursement." She further argued that the statutory scheme, in addition to the assignment and subrogation remedies noted above, also authorizes the placement of a lien on the recovery obtained by the plaintiffs in any personal injury action (see, Social Services Law § 104-b). She asserted, "the DSS lien on the settlement proceeds attaches to the property of the defendants, and therefore does not violate any statutory prohibition against recovery from a person under twenty-one years of age." She argued that the law, in authorizing the DSS to assert the lien, "does not distinguish between recipients who are over the age of twenty-one (21) years or under the age of twenty-one (21) years."

An attorney for the defendants in the personal injury action also submitted an affirmation in which he asserted that the settlement in the sum total of $1,300,000 related to "all claims being brought against the defendants." He stated, "[S]ince the action has already been settled, in open court, and all claims being brought in this case were contemplated to be included within the settlement, it would be a terrible injustice for the defendants to bear the costs of any additional expenses and liens above and beyond the settlement amount."

In a reply affirmation, the attorney for the plaintiffs asserted that the case law relied upon by the DSS related to adult, rather than to infant recipients of Medicaid who later obtain money judgments or settlements in their favor.

Following oral argument, the Supreme Court granted the plaintiffs' motion to vacate the lien. It is from this order that the DSS now appeals.

There can be no dispute as to the validity of the general principle that a Medicaid lien may be satisfied from all of the proceeds of the settlement of a personal injury action brought by the recipient of Medicaid benefits, and that the proceeds available for the satisfaction of such a lien are not limited to the portion of such settlement specifically allocated to past medical expenses (see, Calvanese v Calvanese, 93 NY2d 111). Whether this general rule applies in the case of a Medicaid recipient who is under the age of 21 must remain an open question on this appeal, because the DSS no longer presses the argument it made in the Supreme Court, which was based on the contention that this general rule does apply, even in the case of an infant plaintiff. Now, on appeal, the DSS seems to accept without dispute the continued vitality of Baker v Sterling (39 NY2d 397, supra), which interpreted Social Services Law § 104 (2) as providing that, when a Medicaid recipient is under the age of 21, only that portion of a settlement attributable to past medical expenses is properly subject to a Medicaid lien.

The plaintiffs, in their brief, note the change in the position of the appellant DSS, asserting that, contrary to its position in the Supreme Court, the DSS, on appeal, "impliedly accepts that its lien could not be enforced against such part of the settlement (if any) as was really paid in compensation for the infant-plaintiffs' pain and suffering." The plaintiffs argue, in fact, that the current argument of the DSS, that only the portion of the settlement allocable to medical expenses may be used to satisfy the Medicaid lien, is not properly reviewable on appeal, because it was never advanced before the Supreme

Court. However, we do not agree with the proposition that because the DSS took a more macroscopic approach in the Supreme Court, by arguing that all of the settlement proceeds are available to satisfy the lien, it may not now advance the narrower argument, to the effect that the lien may be satisfied out of only a portion of those proceeds.

We do wish to clarify, however, that we consider it the obligation of this Court to review only those arguments which have been advanced on appeal, and not those which, although raised in the Supreme Court, have now been abandoned. Thus, we reiterate that we are not called upon to decide the question of whether, in the case of an infant, as in the case of an adult, the Medicaid lien may be satisfied out of all of the proceeds of a personal injury settlement (*see, Calvanese v Calvanese*, 93 NY2d 111, *supra; see also, Santiago v Craigbrand Realty Corp.,* 268 AD2d 28, *supra; Gold v United Health Servs. Hosps.,* 261 AD2d 67, *supra*). In other words, we leave open the question of the continued validity of the Court of Appeals decision in *Baker v Sterling* (39 NY2d 397, *supra*), considering that the appellant has, on appeal, if not in the Supreme Court, in effect conceded the continued validity of the holding of that case. However, for the sake of clarity, a discussion of the statutory framework under review in *Baker* is warranted, along with an examination of how the holding of *Baker* has been interpreted in light of subsequent changes, or additions, to the relevant statutory law.

In *Baker v Sterling (supra),* the Court of Appeals recounted the history of the law in this area, noting initially that, "[a]t common law the recipient of public assistance was not obliged to repay, and no action could be brought to recover sums expended for his care and maintenance" (*Baker v Sterling, supra,* at 401, citing *City of Albany v McNamara,* 117 NY 168). The common-law rule was altered in 1901, when the Legislature enacted section 57 of the Poor Law, the statute whose current manifestation is contained in Social Services Law § 104 (1). This statute provides, in part, the following:

> "A public welfare official may bring an action * * * against a person discovered to have real or personal property * * * if such person * * * received assistance and care during the preceding ten years." (Social Services Law § 104 [1].)

The *Baker* Court went on to note that in 1936 certain limitations were placed on the scope of the right of action embodied

in Social Services Law § 104 (1). These limitations are now set forth in subdivision (2) of that statute, which states, in part:

> "No right of action shall accrue against a person under twenty-one years of age by reason of the assistance of care granted to him unless at the time it was granted the person was possessed of money and property in excess of his reasonable requirements, taking into account his maintenance, education, medical care and any other factors applicable to his condition." (Social Services Law § 104 [2].)

It was not until 1964 that the Legislature enacted a statute (*see*, Social Services Law § 104-b) which authorized the appropriate public official to place a lien on the proceeds of any personal injury action brought on behalf of a recipient of public assistance. This statute contained no special exception relating to infants analogous to that found in Social Services Law § 104. The dissenters in *Baker* concluded that this meant that a local Department of Social Services could impose a lien upon the proceeds of a personal injury action obtained by an infant plaintiff. The majority instead interpreted Social Services Law § 104-b as being essentially procedural, and subordinate to the provisions of Social Services Law § 104, which contained the exception for infants. The majority also interpreted the term "property in excess of [the infant's] reasonable requirements," as it appears in Social Services Law § 104 (2) as including that portion of a personal injury action settlement or judgment which relates to a claim for past medical costs, on the theory that the infant in question never actually paid those costs. Thus, that portion of such a settlement or judgment was subject to a lien, according to the holding of *Baker v Sterling (supra)*.

*Baker* was decided in 1976. Since that time, the complex of interwoven State and Federal Medicaid statutes has evolved significantly. In 1993 (L 1993, ch 433, § 3), the Legislature added subdivision (3) to Social Services Law § 104. This new subdivision prohibits the placement of a lien on funds held by a trustee in a "supplemental needs trust" established pursuant to EPTL 7-1.12 (*see, Cricchio v Pennisi,* 90 NY2d 296, 307, n 4). In addition, as noted by the Appellate Division, First Department, in *Santiago v Craigbrand Realty Corp. (supra),* it was only in 1981, several years after the decision in *Baker,* that the Legislature enacted section 366 (4) (h) (1) and section 367-a (2) (b) of the Social Services Law (*see also, Gold v United Health Servs. Hosps., supra*). Social Services Law § 366 (4) (h) (1) (i) provides, in essence, that recipients of Medicaid must as-

sign, to the appropriate Social Services official, their right to receive "any benefits which are available to him or her individually from any third party for care or other medical benefits." Social Services Law § 367-a (2) (b) provides, in essence, that the local Social Services agency which has furnished care "shall be subrogated * * * to any rights [the recipient] may have to medical support or third party reimbursement." These two statutes, which concede to the DSS a right of assignment and a right of subrogation represent two aspects of the "triad" of recoupment devices, the third of which is the lien provision contained in Social Services Law § 104.

In *Cricchio v Pennisi (supra),* the Court of Appeals held that a Medicaid lien in place pursuant to Social Services Law § 104-b must be satisfied before the transfer, into a special needs trust, of the proceeds of a personal injury action. In so doing, the Court held that Social Services Law § 104 (3) prohibits only the placement of a. lien on assets already contained in such a trust (*see, Cricchio v Pennisi, supra,* at 307, n 4). The Court also stated that the right to recoupment which the DSS was attempting to enforce was derived not from Social Services Law § 104 "but rather from the assignment, subrogation, and recoupment provisions created by 42 USC §§ 1396a and 1396k, and Social Services Law § 366 (4) (h) (1) and § 367-a (2) (b)" (*Cricchio v Pennisi, supra,* at 308, n 4). Therefore, the Court concluded that neither the terms of Social Services Law § 104 (3), which limits the right of a Social Services agency to assert a claim on property held in a special needs trust, nor the terms of Social Services Law § 104 (2), which limits the right of such an agency to assert a claim against an infant, had any relevance. For these reasons, the *Cricchio* Court held that *Baker* was inapposite.

In *Calvanese v Calvanese* (93 NY2d 111, *supra*), the Court of Appeals decided a question left open in *Cricchio v Pennisi (supra),* and held that a Medicaid lien may be satisfied out of any part of the proceeds of the settlement of a personal injury action, and not merely out of that portion of the settlement explicitly allocated to past medical expenses. The Court found that none of the controlling Federal or State statutes limited the scope of the Medicaid lien in this way (*see, Calvanese v Calvanese, supra,* at 118). The Court, for the same reasons as those expressed in *Cricchio v Pennisi (supra),* rejected the argument that *Baker v Sterling (supra)* was controlling.

In *Santiago v Craigbrand Realty Corp.* (268 AD2d 28, *supra*), the majority at the Appellate Division, First Department, as-

serted its view that the "logical implications" of both *Cricchio v Pennisi (supra)* and *Calvanese v Calvanese (supra)* required the conclusion that the infancy exception spelled out in Social Services Law § 104 (2) is no longer an impediment to the enforcement of a Medicaid lien against the entirety of the settlement of a personal injury action obtained on behalf of an infant. The majority also stated, "[t]he requirement that the Medicaid program comply with Federal mandates and be the payer of last resort is equally compelling whether the recipient is under 21 years of age or an adult. Thus, in the absence of any authority indicating otherwise, there is no basis to adopt plaintiffs' position and judicially recognize a distinction between adults and individuals less than 21 years of age when assessing DSS's right to recoupment" (*Santiago v Craigbrand Realty Corp., supra,* at 34). The majority opinion of the Appellate Division, First Department, thus followed the lead of the Third Department, which a few months earlier, in *Gold v United Health Servs. Hosps. (supra),* had reached the same conclusion.

The authority furnished by *Santiago v Craigbrand Realty Corp. (supra)* and *Gold v United Health Servs. Hosps. (supra)* is persuasive. However, as reflected in Justice Mazzarelli's dissent in the *Santiago* case, the Court of Appeals has never overruled *Baker v Sterling (supra)*. It should be acknowledged that, in its interpretation of the "logical implications" of *Cricchio and Calvanese (supra),* the Court in *Santiago*, as the Court in *Gold* before it, in effect held that *Baker* is no longer good law.

As we noted above, the present appeal comes to us in a somewhat unusual posture. The argument which the appellant had made in the Supreme Court, and which has since been vindicated by the Appellate Division, First and Third Departments, in *Santiago v Craigbrand Realty Corp. (supra)* and *Gold v United Health Servs. Hosps. (supra)* has been abandoned on appeal. The continued validity of *Baker v Sterling (supra)* is not in dispute. The appellant DSS has chosen, for whatever reason, to narrow the scope of its argument, and to assert, at this point at least, a right to impose a lien only on that portion of the settlement as relates to medical expenses.

With respect to this argument, we are in complete agreement with the DSS. The papers submitted by the defendants in the personal injury action establish very clearly that their intent, in agreeing to pay $1.3 million, was to obtain, in return, a release from all possible future claims relating to the injuries incurred by the two infant plaintiffs, including any claim based

on the past medical expenses incurred by them. The assertion made by the plaintiffs' counsel that the only causes of action which have been compromised are those for pain and suffering leaves it unclear as to whether the infant plaintiffs themselves, or Kevin McAllister as their guardian, or the DSS as subrogee, may continue to pursue a claim based on past medical expenses. Although, as noted above, the DSS has advised this Court that the causes of action asserted on McAllister's behalf have been discontinued, the general rule is that a voluntary discontinuance is, unless stated in the notice, stipulation, or order of discontinuance, not on the merits (*see*, CPLR 3217 [c]; *Brown v Cleveland Trust Co.*, 233 NY 399; *Herder v Clifford*, 252 NY 141). We also note that, in his complaint, Mr. McAllister asserts that he was obligated to pay certain of the medical costs of the infant plaintiffs, and the appellant would thus be entitled to assert its lien against that portion of the settlement which is allocable to Mr. McAllister's two causes of action (*see*, *Smith v South Brookhaven Health Ctr.*, 245 AD2d 363; *Sizemore v Heavy Transport*, 199 AD2d 969).

The cases decided in the wake of *Baker v Sterling (supra)* hold that the determination as to the extent to which a personal injury settlement relates to the claim for past medical expenses "is to be made by the court and is not foreclosed by the form of the settlement documents or the language used by the attorneys in the settlement stipulation, if that form and language do not truly reflect the consideration of the settlement, or are chosen merely as a means to defeat DSS' recovery" (*Simmons v Aiken*, 100 AD2d 769, 770; *see also*, *McClenahan v Farber*, 247 AD2d 449). While there may have been cases where the record on appeal conclusively established the proposition that, for some legitimate reason, a settlement of a personal injury action included no compromise of the claim based on past medical expenses (*e.g.*, *Lyke v Ira Davenport Mem. Hosp.*, 222 AD2d 1049; *Pang v Maimonides Med. Ctr.-Maimonides Hosp.*, 127 AD2d 641), we do not believe that such a proposition may be considered as having been conclusively established by mere ipse dixit of the plaintiffs' attorney.

For these reasons, we agree with the central argument of the DSS on this appeal, that is, that a Medicaid lien may not be effectively nullified by the mere expedient of the plaintiffs' attorney announcing that the settlement relates to pain and suffering only. We repeat that we are not called upon to decide the larger question of whether the Medicaid lien under review is in fact enforceable against all of the proceeds of the settle-

ment, irrespective of how they are allocated. This argument has been abandoned by the DSS, and an appellant may not properly expect to be granted relief by this Court on the basis of an argument which that appellant has seen fit to abandon (*see, e.g., Yerdon v Lyon,* 259 AD2d 864; *Schell v Dowling,* 240 AD2d 721; *Matter of Snider v Goord,* 252 AD2d 988; *Bracken v Niagara Frontier Transp. Auth.,* 251 AD2d 1068; *Barr v Crosson,* 236 AD2d 875; *Morrison v Budget Rent A Car Sys.,* 230 AD2d 253; *Rebh v Lake George Ventures,* 223 AD2d 986; *Schidzick v Lear Siegler,* 222 AD2d 841; *Matter of Calm Lake Dev. v Town Bd.,* 213 AD2d 979).

Our reluctance to address the larger issue of whether a Medicaid lien may, in the case of an infant as in the case of an adult, be satisfied from all the proceeds of the settlement of a personal injury action, is founded on our respect for the basic theory underlying the adversarial method of appellate litigation. It is always better for an appeals court, as it is for a trial court, to pass upon only those issues which the litigants have had a fair opportunity to address. Clearly, the plaintiffs have not felt the need to address the argument which the appellant DSS has deemed fit to abandon. In this context, the correctness of the decisions of the Appellate Division, First and Third Departments, in *Santiago v Craigbrand Realty Corp. (supra)* and *Gold v United Health Servs. Hosps. (supra)* presents us with an issue which, in the particular context of this appeal, is purely academic.

These considerations, however, ought not to preclude the DSS from reasserting its original argument (abandoned on this appeal) during the course of the further proceedings in the Supreme Court which are, in any event, necessary in light of our determination. The DSS should be granted leave to renew its opposition to the plaintiffs' motion to vacate the lien, and to advance once again its original argument, this time with the support of the *Santiago* and *Gold* cases (*supra*). The plaintiffs should have a fair opportunity to identify any factors which might render those cases distinguishable from the one at hand before the effect of those case on the present litigation is passed upon, either by the Supreme Court or by this Court.

For the foregoing reasons, the order appealed from is reversed, without costs or disbursements, and the motion to vacate the DSS lien is granted solely to the extent of directing a hearing to determine the portion of the settlement related to the claims for past pain and suffering, and is otherwise denied,

with leave to the DSS to renew its opposition in light of *Santiago v Craigbrand Realty Corp. (supra)* and *Gold v United Health Servs. Hosps. (supra).*

O'BRIEN, THOMPSON and FLORIO, JJ., concur.

Ordered that the order is reversed, without costs or disbursements, and the motion to vacate the lien of the Westchester County Department of Social Services is granted solely to the extent of directing a hearing to determine the portion of the settlement related to the claims for past pain and suffering, and is otherwise denied, with leave to the Westchester County Department of Social Services to renew its opposition in light of *Santiago v Craigbrand Realty Corp.* (268 AD2d 28) and *Gold v United Health Servs. Hosps.* (261 AD2d 67).