*1030 OPINION OF THE COURT
Yvonne Lewis, J.
Margaret Fergeson, individually and as mother and natural guardian of Cecilia Harriott, an infant under the age of 14 years, by her attorney, has moved this court for modification of its previous order, dated the 2nd day of June, 2006, which, inter aha, awarded $40,000 to the City of New York in full satisfaction of its asserted Medicaid medical lien of $92,376.40. Plaintiffs counsel argues that this negotiated settlement should be set aside in light of the United States Supreme Court’s recent ruling in Arkansas Dept. of Health and Human Servs. v Ahlborn (547 US —, 126 S Ct 1752 [2006]), to the effect that
“[t]here is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) and 1396k(a). . . . [T]he State can also demand as a condition of Medicaid eligibility that the recipient ‘assign’ in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. See Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler, 537 U. S. 371, 383-385, and n. 7 (2003). But that does not mean that the State can force an assignment of, or place a lien on, any other portion of [a recipient’s] property. . . . [T]he exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies.” (547 US at —, 126 S Ct at 1763 [emphasis added].)
In short, the plaintiff asserts that the Ahlborn (supra) holding makes it clear that the federal Medicaid law and its antilien provision prohibits the recovery of Medicaid liens from tort proceeds that exceed the medical expenses portions thereof.
Counsel for the Department of Social Services of the City of New York (hereinafter DSS) counters that plaintiffs counsel’s argument that the subject medical lien should be abrogated since the arbitrator did not specifically allocate monies to medical expenses is specious. The fact is that the court, in its order submitting the matter to high-low arbitration, added the caveat “that any amount awarded at said arbitration in settlement of the infant’s claim herein shall be subject to further directive *1031 from the court as to legal fees, disbursements, payment of liens[,] and depository directives concerning the infant’s share of the award.” In other words, the order reserved to the court, not to the arbitrator, the task of making the final determination for allocation of damages, which this court made in the infant compromise order. DSS also contends that in Ahlborn (supra), since the parties had stipulated to the medical expenses allocation, the Court held that the Medicaid lien was restricted to the sum allocated for medical expenses. In addition, DSS notes that the Court, in considering the possible manipulation of allocations by party litigants so as to avoid Medicaid liens, opined that such tactics “can be avoided either by obtaining the State’s advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision.” (Ahlborn, 547 US at —, 126 S Ct at 1765.) Furthermore, DSS asserts that the law is well settled in New York that parties to a lawsuit cannot stipulate away Medicaid liens (citing Carpenter v Saltone Corp., 276 AD2d 202 [2d Dept 2000]; Simmons v Aiken, 100 AD2d 769 [1st Dept 1984]). DSS also argues that plaintiffs counsel’s instant motion constitutes a breach of his contract with the department to pay $40,000 in reimbursement of the $92,376.40 lien, and that said breach relieves it of any reciprocal duties, thereby reviving the original lien (citing Restatement [Second] of Contracts § 235 [2]). Finally, in light of the limits on public resources available to fund the Medicaid program, DSS asserts that the granting of the plaintiffs request would violate public policy in that it would reduce the availability of public funds to provide medical assistance to others whose resources are insufficient to cover medical costs.
In reply, plaintiffs counsel reasserts his previous arguments, stressing the fact that it is not in the subject infant’s best interest to allow the Medicaid lien in light of the Ahlborn decision, which makes it clear that the lien was a “mutual substantive mistake” entitling plaintiff to undo the prior conditional accord as neither counsel was aware of the said decision. Accordingly, plaintiffs counsel consents to the City’s request in its opposition papers that the prior conditional accord be nullified. In addition, plaintiffs counsel asserts that the court’s directive that the high-low agreement would be subject to its further directives for legal fees, disbursements, liens, etc., did not give this court authority to alter the arbitrator’s determinations concerning liability and damages which are binding and final.
The definitive pre-Ahlborn New York case in the subject area is Calvanese v Calvanese (93 NY2d 111 [1999]), wherein Chief *1032 Judge Kaye, writing for the Court, ruled that the Court of Appeals agreed with the Appellate Division’s holding that “all settlement proceeds are available to satisfy a Medicaid lien, and that appellants could transfer settlement funds to a supplemental needs trust only after the liens were paid” (id. at 116, citing Calvanese v Calvanese, 250 AD2d 564 [1998]; Matter of Callahan, 254 AD2d 415 [1998]). She added (at 117) that
“[a] Medicaid lien ‘shall attach to any verdict, decision, decree, judgment, award or final order in any suit, action or proceeding in any court or administrative tribunal of this state respecting such injuries, as well as the proceeds of any settlement thereof,’ and continues until discharged by the public welfare official (Social Services Law § 104-b [3], [7]).”
The Court noted (at 119) that with regard to third parties,
“the Department is entitled to reimbursement only for the actual costs of the medical services provided, and not for ‘such statutory Medicaid subsidies characterized as bad debt and charity surcharges’ . . . This determination was based on the statutory foundation for the Department’s subrogation, as well as the nature of subrogation. Because ‘subrogation is wholly dependent on the subrogor’s claim against the third party,’ the Department could not recover an amount greater than the Medicaid recipient could have recouped had she paid for the medical services herself. That amount would not have included the Medicaid surcharges . . . Furthermore, the Department’s subrogation rights were limited by statute to the ‘medical care furnished,’ an amount that does not include the bad debt and charity allowances [provided by Social Services Law § 367-a (2) (b)]” (quoting Matter of Costello v Geiser, 85 NY2d 103, 105 [1995]).
The Court (at 118) further rejected the argument that only the settlement proceeds specifically allocated to past medical expenses should be available to satisfy the Medicaid lien, observing that “[n]owhere in the elaborate statutory scheme governing this area of the law, however, is the agency’s right of recovery restricted in this manner.” That finding has now obviously been disturbed by the ruling in Ahlborn.
The arbitrator’s report contains three points that are particularly germane to the concerns herein raised. One, that “[t]he main and central issue in this arbitration was the causal *1033 connection of the accident to the disability suffered by the infant Cecilia Harriott.” Two, that the “defendant’s negligence alone in the maintenance of its premises . . . caused injury to Cecilia Harriott and I award her the sum of $1,500,000 for pain and suffering and future economic loss.” Three, “[t]his decision is subject to the approval of the Supreme Court, if needed.” There is no dispute that the parties had stipulated to a high-low arrangement of $492,500-$130,000, which limited the award recovery to $492,500, the available insurance coverage, and, that pursuant to the court’s order referring this matter to arbitration, “any amount awarded at the arbitration was subject to further court directive concerning legal fees, disbursements[,] and liens.” In addition, the City neither interceded in nor objected to the high-low arbitration. It is also to be noted that the initial infant compromise order submitted to this court referenced the original Medicaid lien of $92,376.40, which, at the court’s behest, plaintiffs counsel thereupon negotiated to the reduced amount of $40,000.
In the Ahlborn matter, the municipality did not participate in the settlement negotiations, and did not seek to reopen the judgment after the case was dismissed, but it did intervene in the suit and assert a lien against the settlement proceeds ($550,000, $35,581.47 of which constituted reimbursement for medical payments made) for the full amount it had paid for Ahlborn’s care ($215,645.30). The United States Supreme Court, in reversing the District Court’s ruling to the contrary, ultimately found, as hereinabove stated, that the Arkansas Department of Health and Human Services was not authorized by the federal Medicaid law and prohibited by the antilien provision from asserting a lien beyond that portion of the settlement that represented payments for medical care.
Contrary to plaintiffs counsel’s contentions, the facts of this case do not run afoul of the Ahlborn decision. The crux of the Ahlborn decision is that where a municipality/health services agency sues a third party to recoup its medical expenditures on behalf of a recipient/claimant, it will have priority in any settlement, even over the claimant’s out-of-pocket medical costs, if any. Where, however, the recipient/claimant sues a third party and obtains a recovery, the municipality/health services agency — in the absence of any chicanery, and where it had an ample opportunity to intervene and didn’t do so, and/or where it participated in settlement proceedings — is relegated to recoup only that portion of the settlement specifically allocated to medical costs/expenses.
*1034 In the Ahlborn (supra) matter, the Arkansas Department of Health and Human Services did not participate in setting the settlement figure which fixed a specific medical costs component below that of its existing Medicaid lien. Here, DSS also did not participate in the arbitration proceeding. However, the plaintiff and all concerned were aware that the matter was sent to arbitration with the court having reserved to itself the power to set legal fees, liens, etc. In other words, it was clear that liens would be deducted from the settlement regardless of any specific designation therefor. That the arbitrator was aware of and acceded to this limitation was amply demonstrated in his decision wherein he specifically stated that “[t]his decision is subject to the approval of the Supreme Court, if needed.” That approval would, of course, require the imposition of fees and liens as reserved/provided for in the arbitration referral order. The plaintiff, in turn, in submitting her infant compromise order, apprised the court of the entire amount owed to DSS by virtue of its Medicaid lien, presumably with the understanding that the court was free to charge the entire amount (which would have been contrary to Ahlborn [supra]). This court, however, specifically directed plaintiff’s counsel to negotiate a lesser compromise figure with the DSS, which the court thereafter agreed to set as the Medicaid lien portion of the award in its order. Hence, the amount of the reduced lien thereupon became the designated medical costs allocation in this court’s settlement order, and, pursuant to Ahlborn (supra), the only amount thereby recoverable by DSS. This outcome is warranted not simply because it was the fortuitous understanding of all parties concerned, but because fair play, good faith, and public policy require that a mechanism exist in order to enable public health service agencies to recoup some portion of their outlays, when possible, in order to ensure that the less fortunate can, in the future, have access to medical care that they cannot otherwise afford. In addition, as the Court of Appeals, in Calvanese (supra), noted,
“In order to facilitate settlement, the agency may agree to reduce the amount it will accept in satisfaction of its lien — whether to ensure that the value of the lien is not greater than defendants are willing to settle for, or simply to ensure that a settlement will yield a plaintiff additional compensation beyond having medical expenses paid by the State. This abil *1035 ity to settle, however, does not affect the agency’s entitlement to full recovery when sufficient funds are made available by a responsible third party. To conclude otherwise would be to jeopardize Medicaid’s status as a ‘payor of last resort,’ and to ignore limits on public resources available to fund the program.” (93 NY2d at 121.)
On the basis of all of the foregoing, the plaintiffs motion for vacatur of the medical lien portion of this court’s prior order is denied in its entirety. DSS’s request to have the compromised settlement amount set aside and the original lien reinstated is also denied. In addition, plaintiff’s counsel’s request for additional legal fees is likewise denied in that the court is unpersuaded by any prior or current argument offered to increase the same, which, along with awarded disbursements, constitute 43.6% of the infant’s actual recovery herein and 27.9% of the overall award.